UNITED STATES DISTRICT COURT
FOR THE
WESTERN DISTRICT OF NEW YORK

JAKE M. REINHARDT, TAYLOR M. )
SCHMIEDER, KEVIN R. HARRINGTON, )
CASEY E. CARMINATI, and )
KRYSTYNA KIMBRELL, )
 )
  Plaintiffs, )
 )
  v. )   Case No. 1:21-cv-206
 )
THE CITY OF BUFFALO, CLAYTON )
REED, MELISSA KURDZIEL, JAE S. )
MURPHY, SPENCER T. GEORGE, )
ROBERTO J. TORRES, COLIN KEENAN, )
DEVON SALTER-BROWN, individually )
and in their capacities as City of Buffalo )
Police Officers, )
BAIL SHOP, LLC, ADEL MIKHEAIL, )
individually and in his capacity as a bail )
recovery agent for Bail Shop, LLC, )
BUFFALO BAIL BONDS AGENCY, INC., )
DENNIS WHITE, individually and in his )
capacity as a bail recovery agent for Buffalo )
Bail Bonds Agency, Inc., JOHN DOE, )
individually and in his capacity as a bail )
recovery agent for Buffalo Bail Bonds )
Agency, Inc., )
 )
  Defendants. )

**ORDER ON BAIL SHOP LLC AND ADEL MIKHEAIL'S MOTION TO DISMISS**
**(Docs. 57)**

Plaintiffs Jake M. Reinhardt, Taylor M. Schmieder, Kevin R. Harrington, Casey E.

Carminati, and Krystyna Kimbrell ("Plaintiffs") have sued Defendants Bail Shop, LLC ("Bail

Shop") and Adel Mikheail, a bail recovery agent for Bail Shop (collectively, "Bail Shop

Defendants"), along with several other defendants,[1] for claims arising from searches of

---

[1] This action originally included City of Buffalo Police Commissioner Byron Lockwood as a defendant. In response to a motion by the City and Commissioner Lockwood, the court

Plaintiffs' residences on the nights of January 9, 2021 and January 10–11, 2021. (Doc. 41.)

According to the Amended Complaint, bail recovery agents employed by Bail Shop Defendants

and aided by City of Buffalo police officers "engaged in a violent, terrifying, warrantless search"

while trying to locate an alleged bail jumper, Luke Reinhardt, brother of Plaintiff Jake Reinhardt.

(Doc. 41 ¶ 1.)

On April 27, 2021, Bail Shop filed a motion to dismiss all claims under Fed. R. Civ. P.

12(b)(6) for failure to state a claim. (Doc. 17 at 7.) In their response, Plaintiffs agreed to the

dismissal of Counts I–V with respect to Bail Shop. (Doc. 31 at 2–3.) Prior to a ruling on this

motion, Plaintiffs filed an Amended Complaint, which among other changes added Adel

Mikheail as a defendant. (Doc. 41.) In response, Bail Shop and Adel Mikheail filed a motion to

dismiss all claims under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for

failure to state a claim. (Doc. 57.)

## Facts

Plaintiffs have brought constitutional and tort claims against the City of Buffalo, Clayton

Reed, Melissa Kurdziel, Jae S. Murphy, Spencer T. George, Roberto J. Torres, Colin Keenan,

and Devon Salter-Brown (in their individual and official capacities as City of Buffalo Police

Officers), Bail Shop LLC, Adel Mikheail (individually and in his capacity as a bail recovery

agent for Bail Shop, LLC), Buffalo Bail Bonds Agency, Inc., Dennis White (individually and in

---

dismissed without prejudice Plaintiffs' claims against Commissioner Lockwood and, with
prejudice, certain claims against the City of Buffalo. (*See* Doc. 30.) The City remains a
defendant in connection with Plaintiffs' *Monell* claim only. (*Id.*) The action also originally
included Financial Casualty & Surety, Inc., who was dismissed as a defendant and cross-
defendant pursuant to stipulations by the parties. (*See* Docs. 37, 39.) Plaintiffs' Amended
Complaint names seven City of Buffalo Police Officers as defendants. (*See* Doc. 41.) Buffalo
Bail Bonds Agency, Inc. replaces "Corporation X" as a defendant and Dennis White and John
Doe, bail recovery agents for Buffalo Bail Bonds Agency, Inc., are also added as defendants.
(*Id.*)

his capacity as a bail recovery agent for Buffalo Bail Bonds Agency, Inc.), and John Doe

(individually and in his capacity as a bail recovery agent for Buffalo Bail Bonds Agency, Inc.).

The court reviewed many of the relevant facts in its prior orders. (*See* Doc. 30.) The following

allegations are relevant to the pending motion.

At some point prior to January 9, 2021, the District Attorney of Lebanon County,

Pennsylvania charged Luke Reinhardt, brother of Plaintiff Reinhardt, with misdemeanor simple

assault, retail theft, and driving with revoked operating privileges. (Doc. 41 ¶¶ 36–37.) Luke

Reinhardt did not appear in court on the scheduled date and time, and his bail was revoked. (*Id.*

¶ 33.) Bail Shop, LLC, a surety bail bonds company domiciled in Lebanon, Pennsylvania (*id.*

¶ 20), hired Pennsylvania bail recovery agent Adel Mikheail to locate and return Luke Reinhardt.

(*Id.* ¶ 38.) After Adel Mikheail learned that Luke Reinhardt was likely traveling in Buffalo, he

contacted Dennis White, an agent employed by Buffalo Bail Bonds Agency, Inc., to assist him

with locating and returning Luke Reinhardt. (*Id.* ¶¶ 22, 39–40.)

In pursuit of Luke Reinhardt, bail recovery agents from Pennsylvania and Buffalo,

accompanied by City of Buffalo police officers, entered and searched Plaintiffs' homes. (Doc. 41

¶ 1.) During the first search on January 9, 2021, Dennis White, accompanied by John Doe and

Buffalo Police Officers Clayton Reed and Melissa Kurdziel, gained access to Plaintiff Kimbrell's

home at 1329 Clinton Street in Buffalo, New York and performed a search. (*Id.* ¶¶ 129–134.)

During this search, Dennis White and John Doe carried firearms and dressed in clothing similar

to that worn by law enforcement officers. (*Id.* ¶ 137–138.) One of these pieces of clothing was a

jacket that read "United States Fugitive Task Force." (*Id.* ¶ 137.) Defendants performed the

search without permission or consent from Plaintiff Kimbrell. (*Id.* ¶ 139.) The Amended

Complaint further alleges that they had neither a search warrant nor probable cause. (*Id.* ¶¶ 140, 142.)

On January 10, 2021, Defendants performed a similar search at 31 Oakdale Place in Buffalo, New York, where Plaintiffs Reinhardt, Schmieder, Carminati, and Harrington reside with their children. (*Id.* ¶¶ 26–31.) Agents Dennis White and John Doe approached the front door and, upon finding it locked, began to knock on it to be let inside. (*Id.* ¶¶ 32, 52, 60–63.) The Buffalo Police Department Defendants stood on the sidewalk near 31 Oakdale Place, assisting in the operation. (*Id.* ¶ 64.) The noise awakened Plaintiffs and they heard Agent Dennis White say, "[o]pen it up or we'[ll] kick it in!" (*Id.* ¶¶ 67–68.) Agent Dennis White saw Plaintiff Reinhardt through a window and ordered him to open the door. (*Id.* ¶¶ 69–74.) After seeing Buffalo police officers through his window, Plaintiff Reinhardt thought it would be safe to open the door. (*Id.* ¶ 75.) After he did so, Dennis White and John Doe forced Plaintiff Reinhardt out of his home, pointing their guns at him. (*Id.* ¶ 76–77.) Defendants then entered and searched the residence without presenting a warrant and without consent or permission. (*Id.* ¶ 87.)

Upon observing Defendants about to enter his home, Plaintiff Reinhardt warned them that his wife and his three-year-old daughter were sleeping inside. (*Id.* ¶ 90.) Dennis White ordered Plaintiff Reinhardt to "secure his family," but after asking Plaintiff Reinhardt whether he had any weapons, Dennis White told him to stay outside. (*Id.* ¶¶ 91, 95.) Plaintiff Reinhardt asked Dennis White to show him his search warrant, to which White responded, "You will see it soon." (*Id.* ¶ 94.) Throughout this exchange, Plaintiff Reinhardt was standing outside in the cold winter air without a shirt or shoes. (*Id.* ¶ 95.)

Dennis White, John Doe, Jae S. Murphy, and one other City of Buffalo police officer entered the property through both the front and back doors. (*Id.* ¶¶ 96–97.) They were startled to

see the pregnant Plaintiff Schmieder and her three-year-old daughter. (*Id.* ¶¶ 102–103.) They pointed their guns at Plaintiff Schmieder and ordered her to put her daughter down. (*Id.* ¶ 104.) Defendants then searched the entire lower apartment for Luke Reinhardt, even though they had been told that he did not reside at this address. (*Id.* ¶ 106.) They also questioned Plaintiffs at gunpoint about Luke Reinhardt's whereabouts. (*Id.* ¶¶ 107–109.) Plaintiff Reinhardt suffered emotional distress on account of not knowing whether his family was safe. (*Id.* ¶ 110.)

Later in the search, Dennis White and John Doe broke the door to the upstairs apartment and entered and searched the upstairs apartment occupied by Plaintiffs Harrington and Carminati. (*Id.* ¶ 112.) Dennis White and John Doe pointed their guns, mounted with flashlights, directly at Harrington and Carminati's five-year-old child. (*Id.* ¶ 113.) During this time, Buffalo police officers continued to assist the bail agents. (*Id.* ¶¶ 114–116.) When Defendants exited the property, Plaintiff Reinhardt again asked to see the bail agents' warrant. (*Id.* ¶¶ 118–120.) Dennis White walked towards his car without showing Plaintiff Reinhardt a warrant. Plaintiff Reinhardt began to walk towards the car as well (*id.* ¶ 121), at which point Buffalo police officers told Plaintiff Reinhardt "not to walk up on them." (*Id.* ¶ 123). Shortly afterwards, the bail agents showed Plaintiff Reinhardt a bail bond contract. (*Id.* ¶ 124.) After Defendants left, Plaintiffs Reinhardt, Schmieder, Harrington and Carminati tried to comfort their children, but no one could go back to sleep. (*Id.* ¶ 128.)

## Analysis

I.     **Legal Standards**

To survive a Rule 12(b)(6) motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*see also* Fed. R. Civ. P. 8(a)(2). The court must make all reasonable inferences in favor of the non-moving party. *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 150 (2d Cir. 2016). Dismissal is appropriate when "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000). The court is not required to take conclusory statements or unsupported inferences as true. *See Twombly*, 550 U.S. at 557.

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994). Where no evidentiary hearing has been held, "the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). By requiring "fair warning" that an individual's activities in a state may subject him to suit there, the Due Process Clause protects an individual's liberty interest and "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quotation marks omitted).

When confronted by a motion raising both jurisdictional and substantive defenses, the court considers the jurisdictional issues as a preliminary matter, since "without such jurisdiction [a court] lacks power to dismiss a complaint for failure to state a claim." *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222 (2d Cir. 1963).

## II.    Personal Jurisdiction

### A.    Bail Shop

A defendant must object to the court's exercise of personal jurisdiction in the first

Rule 12 motion or in the first responsive pleading or else the defense is considered waived. Fed.

R. Civ. P. 12(h)(1); 2 Moore's Federal Practice – Civil § 12.31 (3d ed. 2021). Once a defendant

has waived personal jurisdiction, this defense "may not be resurrected merely because a plaintiff

has amended the complaint." *Gilmore v. Shearson/Am. Express Inc.*, 811 F.2d 108, 112 (2d Cir.

1987), *overruled on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485

U.S. 271 (1998).

By failing to object to the court's exercise of personal jurisdiction in its first Rule 12

motion, Bail Shop has waived this defense. The addition of Adel Mikheail as a defendant does

not revive it. Bail Shop's motion to dismiss for lack of personal jurisdiction under Federal Rule

of Civil Procedure 12(b)(2) is denied.

### B.    Adel Mikheail

Mr. Mikheail is a citizen and domiciliary of Pennsylvania. (Doc. 41 ¶ 21.) As this is Mr.

Mikheail's first Rule 12 motion, he has not waived the defense of lack of jurisdiction. Fed. R.

Civ. P. 12(h)(1)(A).

A two-step inquiry governs whether personal jurisdiction exists over a non-domiciliary.

*Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). First, the court

determines whether the long-arm statute of the forum state permits the exercise of jurisdiction

over the defendant. If the laws of the forum state permit jurisdiction, the court next determines

whether the exercise of such jurisdiction comports with the requirements of due process. *Id.*; *Best*

*Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

In ruling on a motion to dismiss under Rule 12(b)(2) on the basis of affidavits, the court assumes the truth of the plaintiffs' factual allegations for purposes of the motion and "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) ("In evaluating whether the requisite showing has been made, we construe the pleadings and any supporting materials in the light most favorable to the plaintiffs."). Blanket denials are generally insufficient to overcome this deferential standard. *See, e.g., Jenkins v. Miller*, No. 2:12-cv-184, 2017 WL 4402431, at *25 (D. Vt. Sept. 29, 2017) (finding defendants' affidavits "flatly deny[ing] all the tortious conduct Plaintiffs allege" inadequate to defeat plaintiffs' prima facie showing of personal jurisdiction). Where parties submit conflicting affidavits to establish personal jurisdiction, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft MHB & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993) (quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990)).

Plaintiffs argue the court has specific personal jurisdiction to adjudicate Mr. Mikheail's involvement in this dispute because he "coordinated and supervised the raids of Plaintiffs' homes," via telephone or in-person in Buffalo. (Doc. 58-1 at 8.) In response, Mr. Mikheail avers that he was not physically present in the state of New York when the alleged searches took place and "did not participate in, supervise, or control the alleged operation described in Plaintiffs' Amended Complaint." (Doc. 57-1 at 5–6.) Plaintiffs respond that even if Mr. Mikheail was not physically present in the state to commit a tortious act as alleged, he engaged in a transaction of

8

business or a contract in the state, formed an agency relationship with an entity within the state, or committed a tort outside the state causing injury within New York—any of which would support specific jurisdiction under New York's long-arm statute. (Doc. 58-1 at 6–10 (citing N.Y. C.P.L.R. § 302(a)(1)–(2).)

The court begins by addressing New York's long arm statute.

### 1.   N.Y. C.P.L.R. § 302(a)(1) – Transaction of Business or Contract to Supply Goods or Services in New York

Under New York State's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . (1) transacts any business within the state or (2) contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1)–(2). This subsection has two prongs, "either one of which can form a basis for the exercise of personal jurisdiction over a non-domiciliary." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 786 (2d Cir. 1999).

The question of whether an out-of-state defendant transacts business in New York is based on the totality of the circumstances, guided by four factors:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996) (internal citations omitted).

Bail Shop Defendants argue that a defendant not physically present in a state cannot be subject to jurisdiction in that state. (Doc. 57 at 11.) This conclusion is unfounded. It is well-settled that a party need not be physically present in New York at the time the contract was

formed to be subject to jurisdiction in the state. *See Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 16 (1970). However, remote communications into New York "will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its 'center of gravity' inside New York, into which a defendant 'projected himself.'" *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005) (quoting *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 112 (S.D.N.Y. 1993)). For example, § 302(a)(1) supports jurisdiction over a foreign resident who participates in an art auction held in New York via telephone, or who retains a New York attorney for bankruptcy proceedings in New York. *See Parke-Bernet Galleries*, 26 N.Y.2d at 16; *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*, 543 N.Y.S.2d 978 (N.Y. App. Div. 1989). For a single interstate communication to "constitute a transaction of business subjecting the defendant to section 302(a)(1) jurisdiction, it is essential in each case that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) (cleaned up).

All but the first *Agency Rent A Car* factors weigh against finding Mr. Mikheail transacted business in New York. Construed in the light most favorable to Plaintiffs, the facts establish that Mr. Mikheail contacted New York citizen Dennis White to assist in the search for Luke Reinhardt in New York. (Doc. 41 ¶ 40.) In their Amended Complaint, Plaintiffs allege that "bail enforcement agent Adel Mikheail ordered, supervised, conducted, and participated in the acts complained of." (*Id.* ¶ 20.) Mr. Mikheail had an ongoing contractual relationship with a New York citizen, albeit a loosely defined one, as Mr. Mikheail had "regularly employed and utilized the services of Defendants Dennis White and John Doe for engaging in the business of bail recovery agents." (*Id.* ¶ 45.) As there are no allegations as to a written contract, the factors

concerning choice-of-law and other contractual terms are irrelevant here. Although it would be fair to construe this verbal contract as having its "center of gravity" inside New York because the hunt for Luke Reinhardt was to take place there, the totality of the circumstances do not support a finding that this business transaction alone shows that Mr. Mikheail had sufficiently availed himself of the privilege of doing busines in New York. Because either one of the two prongs of section 302(a)(1) "can form a basis for the exercise of personal jurisdiction," the court turns to whether the "supply goods or services" prong of § 302(a)(1) would support personal jurisdiction over Mr. Mikheail. *Fiddler*, 171 F.3d at 786.

To satisfy the "supply services" prong of New York's long-arm statute, a Plaintiff must only show that defendant contracted to furnish services in New York, even if the contract creating that obligation was performed out-of-state. *See Island Wholesale Wood Supplies, Inc. v. Blanchard Indus., Inc.*, 476 N.Y.S.2d 192, 195 (N.Y. App. Div. 1984). Given the expansive nature of this grant of jurisdiction, courts have stressed that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *George Reiner & Co. v. Schwartz*, 41 N.Y.2d 648, 651 (1977).

Construed in the light most favorable to Plaintiffs, Plaintiffs have not established a prima facie showing of personal jurisdiction over Mr. Mikheail under the second prong of § 302(a)(1). Mr. Mikheail contacted New York citizen Dennis White to perform the service of locating Luke Reinhardt in New York. Dennis White performed this service wholly within New York state. This service was not a "one-off transaction," but was rather part of an on-going relationship whereby Mr. Mikheail "regularly employed and utilized the services of Defendants Dennis White and John Doe for engaging in the business of bail recovery agents." (Doc. 41 at ¶ 45);

*Chloe*, 616 F.3d 158 (emphasizing importance of the repeat nature of services). However, under this reading, Mr. Mikheail himself did not actually perform any services in New York, but rather contracted with a New York domiciliary to provide those services. According to the Amended Complaint, Mr. Mikheail was physically present in New York state for at least part of the search. (Doc. 41 ¶¶ 144–145.) But the Amended Complaint does not allege with any specificity whether Mr. Mikheail's actions in New York were taken pursuant to his agreement with Dennis White. Indeed, the Amended Complaint does not allege that Mr. Mikheail was present at any of the home searches, only that he, Dennis White, or John Doe "stalked" and "followed" one of the Plaintiffs the morning after the 1329 Clinton Street search. (*Id.*) These allegations would be sufficient to establish specific personal jurisdiction over Dennis White, but not Mr. Mikheail. The court turns to whether the Amended Complaint supports a finding that Dennis White was acting as an agent of Mr. Mikheail in a manner that supports jurisdiction under the long-arm statute.

At common law, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *In re Tribune Co. Fraudulent Conveyance Litig.*, 946 F.3d 66 (2d Cir. 2019) (quoting Restatement (Third) of Agency § 1.01 (2006)); *see also Comm. Union. Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003) ("Establishment of [an agency] relationship requires facts sufficient to show (1) the principal's manifestation of intent to grant authority to the agent, and (2) agreement by the agent. In addition, the principal must maintain control over key aspects of the undertaking.") (internal citations omitted). The "hallmark of an agency relationship" is the principal's power to give "interim instructions" to its agent. *Jackson*

*v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 138 (E.D.N.Y. 2015) (quoting Restatement (Third) of Agency § 1.01 cmt. f(1)).

Here, Mr. Mikheail manifested his intent to grant authority to Dennis White by contacting him to pursue Luke Reinhardt in Buffalo, New York. He did so because he was not personally licensed as a bail agent in New York and could not lawfully pursue Luke Reinhardt himself. (Doc. 41 ¶ 41.) Dennis White, in turn, manifested his assent by effectuating the searches. However, even viewing the allegations in a light most favorable to Plaintiffs and drawing all reasonable inferences in its favor, Plaintiffs' non-conclusory allegations regarding the agency relationship between Mr. Mikheail and Dennis White fail to "nudge" the assertion of an agency relationship "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. The Amended Complaint does not clarify whether Mr. Mikheail continued to maintain control over "key aspects" of the home searches beyond the conclusory allegation that he "supervised and coordinated" the searches. (*Id.*) Mr. Mikheail did not give interim instructions to Dennis White. For example, there is no allegation that Mr. Mikheail directed Dennis White to specific addresses in Buffalo or provided detailed directions regarding how and when the searches were to be effectuated. A directive to "locate[] and return[] Luke Reinhardt" to Pennsylvania falls short of the requisite control necessary to establish an agency relationship. (*Id.* ¶ 41.) Accordingly, Mr. Mikheail did not himself provide services within New York state, nor did an agent. Although subsequent discovery might unearth evidence showing an agency relationship between Mr. Mikheail and Dennis White, at this time the court cannot conclude this theory supports jurisdiction as a matter of law. The "goods and services" prong of section 302(a)(1) does not therefore convey jurisdiction over Mr. Mikheail.

2.      **N.Y. C.P.L.R. § 302(a)(2)–(3) – Tortious Acts**

Plaintiffs argue that Bail Shop Defendants committed a tortious act within the state or through an agency relationship, or committed a tort outside of New York causing injury within the state, either of which would support personal jurisdiction. N.Y. C.P.L.R. § 302(a)(2)–(3).

In support of their assertion of jurisdiction under § 302(a)(2), Plaintiffs argue Mr. Mikheail committed torts in New York. Specifically, they write that he "coordinated and supervised the raids of Plaintiffs' homes," and "followed plaintiff Taylor Schmieder in an SUV." (Doc. 58 at 8–9.) Taken alone, neither of these allegations are tortious acts. Plaintiffs surmise that Mr. Mikheail's coordination and supervision "by phone," is enough for § 302(a)(2) jurisdiction. (*Id.* at 9.) However, a negligent act that takes place outside of New York—such as negligent hiring—that causes an injury in the state does not confer jurisdiction under § 302(a)(2). *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 461 (N.Y. 1965); *see also Fox v. Boucher*, 794 F.2d 34 (2d Cir. 1986) (federal district court had no jurisdiction under § 302(a)(2) where defendant allegedly committed a tort during a telephone conversation from New Jersey).

A better argument for jurisdiction under § 302(a)(2) arises under a conspiracy theory. Courts regularly grant personal jurisdiction under § 302(a)(2) where a defendant is part of a conspiracy involving the commission of a tortious act in New York. *See Wimbledon Fin. Master Fund, Ltd. v. Weston Cap. Mgt. LLC*, 76 N.Y.S.3d 121 (N.Y. App. Div. 2018) (jurisdiction under § 302(a)(2) was proper where defendants were not present in New York but were co-conspirators in a fraudulent scheme carried out in New York); *Lawati v. Montague Morgan Slade Ltd.*, 102 A.D.3d 427, 428 (N.Y. App. Div. 2013) (section 302(a)(2) established jurisdiction over defendant co-conspirator who was aware of torts being committed by other defendant co-

14

conspirators in New York); *see also* 1 Weinstein, Korn & Miller CPLR Manual, § 3.06(d) (2021) ("jurisdiction can be found where defendants are part of a conspiracy that involved the commission of a tortious act in New York.").

To establish jurisdiction over a non-domiciliary on the basis of the New York acts of a co-conspirator, plaintiff must "(1) establish a prima facie case of conspiracy; (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) demonstrate the commission of an overt act in New York during, and pursuant to, the conspiracy." *Best Cellars Inc. v. Grape Finds at Dupont, Inc.*, 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000). "The requisite relationship between the defendant and its New York co-conspirators is established by a showing that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *Id.* (quoting *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1269 (S.D.N.Y. 1991)).

Whether jurisdiction over Mr. Mikheail exists is therefore bound to the question of whether Plaintiffs have established a prima facie case of a conspiracy involving the commission of tortious acts. For the reasons discussed in more detail in Sections III and V, the court finds Plaintiffs have plausibly alleged that Mr. Mikheail was a participant in a § 1983 conspiracy, and that tortious acts were committed in New York in the course of or as a result of the conspiracy. This satisfies the three requirements of the *Best Cellars* test. 90 F. Supp. at 446.

Plaintiffs have also established the "requisite relationship" between Mr. Mikheail and his New York-based co-conspirators. *Chrysler*, 778 F. Supp. 2d at 1269. Construed in the light most favorable to Plaintiffs, the Amended Complaint supports the inference that Mr. Mikheail had an

awareness of the effects of his activity in New York. Believing Luke Reinhardt to be traveling in New York, he contacted and conspired with a New York-based bail agent to locate and return Luke Reinhardt to Pennsylvania. It is also reasonable to infer that the manhunt in New York was to the financial or professional benefit of Mr. Mikheail, who was hired by Bail Shop to locate and return Luke Reinhardt. (Doc. 41 ¶ 38.) Last, the Amended Complaint plainly alleges that the acts of co-conspirators in New York were performed under the control of, or at the request of, or on behalf of Mr. Mikheail. Mr. Mikheail hired Dennis White to pursue Luke Reinhardt in New York. Dennis White's alleged tortious acts as an agent or co-conspirator were therefore at the request of, or on behalf of, Mr. Mikheail. Accordingly, this court may assert personal jurisdiction over Mr. Mikheail under N.Y. C.P.L.R. § 302(a)(2).

Because this court finds that there is jurisdiction pursuant to § 302(a)(1) and (2), Plaintiffs' claims regarding § 302(a)(3) need not be addressed.

### 3.    Due Process

Having determined that jurisdiction over Mr. Mikheail is permitted under the New York long-arm statute, the court turns to the due process inquiry. The due process test for personal jurisdiction has two related components: the "minimum contacts" inquiry and the "reasonableness" inquiry. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). Sufficient minimum contacts with the forum state exist for out-of-state defendants when the defendant "purposefully avails [him or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Where the defendant "deliberately" has engaged in activities giving rise to the facts in dispute in the forum state, *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984), or has contracted to

perform business in the forum state, *Travelers Health Ass'n v. Commonwealth of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950), it is presumptively reasonable to require the defendant "to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475.

"The New York long-arm statute does not extend in all respects to the constitutional limits." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60–61 (2d Cir. 2012). *See also Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276 (E.D.N.Y. 2013); *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp 88, 90 (S.D.N.Y. 1997). Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute, the minimum contacts and reasonableness requirements of due process are likewise satisfied.

For these reasons, Mr. Mikheail's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) is denied.

### C.    Motion for Limited Discovery on Personal Jurisdiction

Defendants request limited jurisdictional discovery. (Doc. 56 at 11.) Having already concluded that New York's long-arm statute grants specific jurisdiction over Mr. Mikheail on the facts available to the court, it is unnecessary to initiate jurisdictional discovery. Defendants' request for jurisdictional discovery is denied.

## III.    Fed. R. Civ. P. 4(m)

Before turning to the other claims raised in Bail Shop Defendants' Motion to Dismiss, the court pauses to raise the issue of timely service. "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

specified time." Fed. R. Civ. P. 4(m). If the plaintiff makes a showing of good cause for the delay, a mandatory extension of time to perfect service must be issued. *Id.*

The Amended Complaint was filed on September 1, 2021. The 90-day window for Plaintiffs to serve all defendants lapsed on November 30, 2021. All Defendants except John Doe have been named and served. (*See* Docs. 45, 46, 48.) Although Defendants have not moved for dismissal as against John Doe, the Rules empower the court to dismiss *sua sponte* any defendants who have not been served, after notice to the parties. *Thompson v. Maldonado*, 309 F.3d 107, 110 (2d Cir. 2002) ("As indicated by the plain language of Rule 4(m), notice to the plaintiff must be given prior to a *sua sponte* dismissal."). The deadline to identify and serve John Doe has passed. This order serves as notice to Plaintiffs that failure to effect service will result in dismissal without prejudice of John Doe. Plaintiffs have 30 days from the date of entry of this order to either (1) identify and serve John Doe, or (2) file a motion for an extension of time for service in reliance on the "good cause" standard of Rule 4(m), no more than 10 pages in length.

## IV.   Federal Claims

Defendants Bail Shop and Adel Mikheail seek dismissal of Plaintiffs' 42 U.S.C. § 1983 conspiracy claim (Count V). (Doc. 57 at 7.) Plaintiffs agreed to dismiss their constitutional claims against Bail Shop, including Count V. (Doc. 31 at 1; Doc. 58-1 at 2, n.1.) The court grants Bail Shop's motion to dismiss Count V as to Bail Shop.

Plaintiffs have not agreed to dismiss their constitutional claims against Adel Mikheail. (Doc. 58-1 at 23–25.) Accordingly, the court considers whether Plaintiffs have stated a plausible § 1983 conspiracy claim against Mr. Mikheail.

Adel Mikheail makes two arguments against the 42 U.S.C. § 1983 conspiracy claim. First, he argues that the facts pertaining to the § 1983 claim in the Amended Complaint are mere

recitations of the elements of conspiracy and thus too sparse to survive a Rule 12(b)(6) motion to dismiss. (Doc. 57 at 9–10.) Second, he argues that Plaintiffs have failed to establish that he is a state actor acting under color of state law necessary to support § 1983 liability. (*Id.* at 10–11.) The court considers these arguments in turn.

To state a conspiracy claim under § 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Private entities and individuals cannot be held vicariously liable under § 1983 for the constitutional violations of employees or agents. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408–09 (2d Cir. 1990). Although "completely unsubstantiated allegations of conspiracy are insufficient to state a claim for relief under § 1983," *Covington v. City of New York*, No. 99 Civ. 4234(SAS), 1998 WL 226183, at *3 (S.D.N.Y. May 4, 1998), "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn*, 200 F.3d at 72 (cleaned up); *see also Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166 (1993) (proscribing the application of a "heightened pleading standard" in civil rights cases).

Plaintiffs' Amended Complaint plausibly alleges a § 1983 conspiracy involving Mr. Mikheail. First, Plaintiffs allege that Mr. Mikheail formed an agreement with Dennis White to locate Luke Reinhardt in Buffalo, New York, who in turn worked with Buffalo Police Department Defendants to unlawfully search Plaintiffs' homes. Mr. Mikheail allegedly "ordered, supervised, conducted, and participated in" the home searches and "supervised and coordinated"

the raids. (Doc. 41 ¶¶ 20, 52.) Taken alone, the court agrees that these allegations amount to no more than a recitation of the elements of conspiracy.

However, the Amended Complaint further details specific communications between Mr. Mikheail and Dennis White, and later between Dennis White, John Doe, and the Buffalo Police Department Defendants, which plausibly allege the formation of an agreement to conduct warrantless searches of Plaintiffs' private residences. (*Id.* ¶¶ 40–41 ("Adel Mikheail contacted Dennis White to assist him with locating and returning Luke Reinhardt"); *Id.* ¶ 66 (the Buffalo Police Department Defendants' actions were performed in furtherance of the operation "coordinated and planned by Bail Shop, Adel Mikheail, and Buffalo Bail Bonds with Defendants Dennis White, John Doe, and the other Defendants."); *Id.* ¶¶ 57–58, 134–136 (detailing pre-raid "huddles" and strategic discussions between Dennis White and Buffalo Police Department Defendants).)[2] The Amended Complaint also details concerted acts to inflict an unconstitutional injury and overt acts done in furtherance of the conspiracy, including communications and cooperation among municipal Defendants, Mr. Mikheail, Dennis White, and John Doe and the ensuing warrantless searches of Plaintiffs' homes. Finally, Mr. Reinhardt's repeated—and ignored—requests to bail agents and municipal police to see a valid search warrant at the very least give rise to an inference that the alleged co-conspirators shared knowledge that the home searches were unlawful. (*Id.* ¶¶ 92–94, 100, 105.)

Whether bail bond enforcement agents are categorically state actors for purposes of § 1983 is unsettled in the Second Circuit.[3] Regardless, courts have long held that private

---

[2] The Order on City Defendants' Motion to Dismiss provides a fuller accounting of the alleged collaboration between bail agents and police officers to conduct warrantless searches of Plaintiffs' private residences. (*See* Doc. 30 at 12–15.)

[3] At least one decision suggests that bail enforcement agents who enlist law enforcement in arresting individuals are state actors. *Marshall v. Reyes*, No. 16-CV-5715 (PKC) (LB), 2016

individuals who conspire with government officials to deprive an individual of their

constitutional rights are transformed into state actors subject to § 1983 liability. This is because

proof of such a conspiracy establishes that the private action was taken under color of state law.

*See Dennis v. Sparks*, 449 U.S. 24 (1980) (finding a private person to act under color of state law

where he conspired with a judge to violate due process rights of plaintiffs); *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144, 152 (1970) (where a private restaurant "is a willful participant in joint

activity with the State or its agents," to discriminate against Black customers, proof of the

conspiracy established the restaurant acted under color of state law and could be held liable

under § 1983); *see also* 5 Martin A. Schwartz, Section 1983 Litigation Claims and Defenses, §

5.16 Joint Participation Doctrine (4th ed. 2022) ("[S]tate action is present when private persons

act jointly or in concert with public officials."). At least one court in the Second Circuit has

applied this "joint action" test in the context of bail enforcement agents, concluding that an agent

who "operated as a willful participant in a joint activity with the State or its agents, or act[ed]

together with state officials or with significant state aid," is transformed into a state actor for

purposes of § 1983.  *Lopez*, 2015 WL 5657361, at *6 (quoting *Abdullahi v. Pfizer, Inc.*, 562 F.3d

163, 188 (2d Cir. 2009)).

---

WL 6603994, at *2 n.4 (E.D.N.Y. Nov. 8, 2016) (citing *Lopez v. Zouvelos*, No. 13-CV-6474
(MKB), 2015 WL 5657361 (E.D.N.Y. Sept. 23, 2015)). A majority of circuits have adopted
similar rules. *See United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009) (where "bounty
hunters did not intend to assist law enforcement, they are not state actors"); *Dean v. Olibas*, 129
F.3d 1001, 1003, 1005–06 (8th Cir. 1997) (bondsman who "did not rely on governmental
assistance" in search was not state actor); *Landry v. A-Able Bonding, Inc.*, 75 F.3d 200, 204–05
(5th Cir. 1996) (bail agent who did not act pursuant to a warrant and did not enlist the aid of
police in effecting arrest is not a state actor); *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547,
552–53 (9th Cir. 1974) (same). Only one circuit has found that bail bondsmen are state actors for
purposes of § 1983 regardless of law enforcement involvement. *See Jackson v. Pantazes*, 810
F.2d 426, 428 (4th Cir. 1987).

Here, the bail recovery agent defendants—including Bail Shop Defendants, Dennis White, and John Doe—can be considered state actors. Dennis White contacted the Buffalo Police Department and "huddled" with them to coordinate the home searches. (Doc. 41 ¶¶ 55, 134–136.) Defendants White and John Doe directed Buffalo Police Officers' actions during the raids, relying on law enforcement assistance to monitor entrances and exists to the buildings. (*Id.* at ¶¶ 53, 60–64.) Mr. Mikheail acted pursuant to a warrant for Luke Reinhardt's arrest and either directly or through co-conspirators enlisted the aid of police to attempt to effect an arrest. *Cf. Landry*, 75 F.3d at 204–05 (bail agent who did not act pursuant to a warrant and did not enlist the assistance of police is not a state actor). Accordingly, Defendants' argument that Plaintiffs' failed to establish that Bail Shop Defendants were state actors acting under color of state law does not support dismissal of this claim.

Last, Bail Shop Defendants contend the court must apply a heightened pleading standard to civil rights conspiracy claims, citing several cases in support. (Doc. 57 at 9–10.) While Defendants are correct to note that a plaintiff asserting a § 1983 conspiracy claim must allege more than conclusory allegations, this standard is not exceptional. Indeed, the court finds no appreciable difference between the standards expressed in the cases cited by Defendants and the *Twombly-Iqbal* pleading standard which demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Although the Amended Complaint does not contain direct evidence of a conspiratorial agreement, the foregoing facts provide enough specific and circumstantial evidence of a conspiracy for the claim to survive the present 12(b)(6) motion to dismiss. *See Pangburn*, 200 F.3d at 72; *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994) ("[C]onspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence."). Last, while it is true that private individuals cannot be held

vicariously liable under § 1983 for the constitutional violations of employees, *see Rojas*,

924 F.2d at 408–09, the same cannot be said for private individuals who directly participate in a

§ 1983 conspiracy. Because the Amended Complaint details Mr. Mikheail's direct involvement

in the conspiracy, the bar against *respondeat superior* liability under § 1983 does not apply.

For the foregoing reasons, Defendants' motion to dismiss the § 1983 conspiracy claim

(Count V) against Adel Mikheail is denied.

**V.      Supplemental Jurisdiction**

Plaintiffs invoked federal question jurisdiction under 28 U.S.C. § 1331 as the basis for

this court's subject-matter jurisdiction over their § 1983 claims, and supplemental jurisdiction

under 28 U.S.C. § 1367(a) as the basis for its jurisdiction over their state-law claims. Having

dismissed Plaintiffs' federal claims against Bail Shop but not Mr. Mikheail, the court now

considers whether 28 U.S.C. § 1367(a) supports its retention of jurisdiction over Plaintiffs' state-

law claims.

Section 1367(a) provides that

[e]xcept as provided in subsections (b) and (c) . . . in any civil action of which the
district courts have original jurisdiction, the district courts *shall* have supplemental
jurisdiction over all other claims that are so related to claims in the action within
such original jurisdiction that they form part of the same case or controversy under
Article III of the United States Constitution.

28 U.S.C. § 1367(a) (emphasis added). Subsection (c) in turn allows the court to decline to

exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the
district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction,
or
(4) in exceptional circumstances, there are other compelling reasons for declining
jurisdiction.

*Id.* § 1367(c).

23

The court has original jurisdiction over Plaintiffs' federal constitutional claims. 28 U.S.C. § 1331. Both the federal and state-law claims arise from "a common nucleus of operative fact." *Cohill*, 484 U.S. at 349 (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Consequently, the court must exercise supplemental jurisdiction over Plaintiffs' state-law claims against Bail Shop Defendants unless a discretionary exception from § 1367(c) applies and weighs against the court's exercise of supplemental jurisdiction. For the following reasons, the court concludes that this case implicates none of the circumstances identified in 28 U.S.C. § 1367(c) that could transform its exercise of supplemental jurisdiction from mandatory to discretionary.

Although the court has dismissed all federal claims against Bail Shop, it has not dismissed "all claims over which it had original jurisdiction." The court retains jurisdiction over federal claims against several other defendants, including Bail Shop employee Mr. Mikheail. Due to their common factual core, adjudicating all claims against all Defendants in a single proceeding will serve the interests of judicial economy and convenience. Moreover, the state law tort claims do not raise novel or complex issues of state law, and concerns about comity between state and federal courts therefore do not weigh strongly in favor of declining to exercise supplemental jurisdiction. *See Drake v. Lab'y Corp. of Am. Holdings*, 290 F. Supp. 2d 352, 375 (E.D.N.Y. 2003) ("[I]ssues of comity would not be offended in exercising jurisdiction over the plaintiff's basic, non-novel state law claims."), *aff'd*, 458 F.3d 48 (2d Cir. 2006). Finally, Bail Shop Defendants have not objected to the court's exercise of supplemental jurisdiction over Plaintiffs' state-law claims on the basis of fairness, or identified any "exceptional circumstances" that would counsel against the exercise of supplemental jurisdiction. The court correspondingly considers any such arguments to be waived. *See Catzin v. Thank You & Good Luck Corp.*, 899

F.3d 77, 83 (2d Cir. 2018) ("Hearing from the parties in person or on the papers is typically an essential component of the inquiry into whether to decline to exercise supplemental jurisdiction because . . . [it] enhances the fairness of the proceedings.").

## VI.  State-Law Claims

Bail Shop Defendants seek dismissal with prejudice of "all purported causes of action contained within Plaintiffs' Complaint." (Doc. 57 at 1.) The Amended Complaint includes state-law tort claims for trespass (Count VII), false imprisonment (Count VII), assault (Count IX), battery (Count X), and intentional infliction of emotional distress (Count XI) for which Plaintiffs seek to hold Bail Shop Defendants vicariously liable. The Amended Complaint also includes claims for torts committed by Bail Shop employee Adel Mikheail (Counts XII, XIII, XIV), for which Plaintiffs seek to hold Adel Mikheail and Bail Shop liable. With the exception of Count XIV, all claims for relief against Bail Shop are brought under the doctrine of vicarious liability. Plaintiffs agree to dismissal for intentional and negligent infliction of emotional distress claims against the Bail Shop Defendants "to the extent this Court agrees that there are more traditional tort theories available." (Doc. 58-1 at 2 n.1.)

The court first addresses the law of vicarious liability in the state of New York and evaluates whether the Amended Complaint plausibly alleges a theory of Bail Shop's vicarious liability for its independent contractors' torts. Concluding that it does, the court then considers whether the Amended Complaint plausibly alleges the requisite elements of each tort for which Plaintiffs seek to hold the Bail Shop Defendants vicariously liable. For the reasons that follow, the court denies the motion to dismiss Plaintiffs' claims for the "traditional tort theories" of trespass (Count VII), false imprisonment (Count VII), and assault (Count IX). The court will

therefore grant the motion to dismiss Count XI against Bail Shop and Count XII against Bail

Shop and Adel Mikheail. The remaining state-law claims are before the court.

### A.   Vicarious Liability

Plaintiffs argue that Bail Shop and Adel Mikheail are vicariously liable for the actions of

Dennis White and John Doe because their tortious acts occurred under the actual or apparent

authority of the Bail Shop Defendants. (Doc. 58-1 at 15.)

Bail Shop Defendants fail to put forth specific arguments about either the scope-of-

employment standard or the applicability of vicarious liability to intentional as well as

unintentional torts. (Doc. 57 at 12.) Rather, Bail Shop Defendants argue that Dennis White and

John Doe were agents or employees of Buffalo Bail Bonds Agency, or else were independent

contractors of Bail Shop, and so Bail Shop cannot be held vicariously liable for their actions

during the alleged incidents. (*Id.* at 11 (citing Doc. 41 ¶¶ 23–24).)

The Bail Shop Defendants' liability under state law for its agents, contractors, and

employees' actions is governed by New York law. In New York, an employer is generally liable

for the negligence of its agents and employees acting in the scope of their employment. *Riviello

v. Waldron*, 391 N.E.2d 1278, 1280–81 (N.Y. 1979); *Mott v. Consumer's Ice Co.*, 73 N.Y. 543,

543 (N.Y. 1878). Unlike agents and employees, an individual who hires an independent

contractor is generally not liable for the torts of the independent contractor or the independent

contractor's employees. *Dean v. City of Buffalo*, 579 F. Supp. 2d 391, 398 (W.D.N.Y. 2008).

There are three exceptions to the general rule of non-liability of an employer for the torts of their

independent contractor: (1) the employer negligently hired, instructed, or supervised the

contractor; (2) the work assigned to the independent contractor involved a non-delegable duty; or

(3) the work assigned to the contractor was inherently dangerous. *Atlantic Container Line AB v. Aref Hassan Abul, Inc.*, 281 F. Supp. 2d 457, 465 (N.D.N.Y. 2003) (internal citations omitted).

For the reasons explained in more detail *supra* in Section II(B)(1), the facts presented to the court in the Amended Complaint do not support a finding that Dennis White and John Doe acted as agents or employees of the Bail Shop Defendants. Rather, the apparent lack of day-to-day control over Dennis White and John Doe's duties supports a finding that they acted as independent contractors. Whether one of the three exceptions to general rule of non-liability for independent contractors attaches will determine Bail Shop Defendants' vicarious liability for the torts of their contractors.

### 1.      Negligent Hiring

To show negligent hiring, Plaintiffs must establish the standard elements of negligence as to the employer, as well as "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). "To hold a party liable under theories of negligent hiring, negligent retention, and negligent supervision, a plaintiff must establish that the party knew or should have known of the contractor's propensity for the conduct which caused the injury. *Bellere v. Gerics*, 759 N.Y.S.2d 105, 107 (N.Y. App. Div. 2003) (internal citation omitted). In other words, "[a] cause of action for negligent hiring or retention requires allegations that the employer . . . failed to investigate a prospective employee notwithstanding knowledge of facts that would lead a reasonably prudent person to investigate that prospective employee."

*Biggs v. City of New York*, No. 08 CIV. 8123 (PGG), 2010 WL 4628360, at *9 (S.D.N.Y. Nov. 16, 2010) (cleaned up).

Plaintiffs allege that Bail Shop Defendants fell short of this duty by failing to properly screen, supervise, and train Dennis White and John Doe regarding the "protections and rights under the Fourth Amendment." (Doc. 41 ¶ 301.) Plaintiffs further allege that Defendants committed the alleged torts due to lack of adequate training or supervision. (*Id.* ¶¶ 169–170, 300.) The Amended Complaint also alleges that Bail Shop Defendants maintained an employer-employee relationship with Dennis White and John Doe (*id.* ¶¶ 41–45), and that Defendants used a bail bond contract, presumably belonging or entrusted to Bail Shop, in the course of committing the alleged torts. (*Id.* ¶ 104.)

These allegations come close to plausibly alleging negligent hiring under New York law, but fall short on one element: The Amended Complaint does not allege that Bail Shop knew or should have known of its employees' propensities to engage in the alleged tortious conduct. While the Amended Complaint plausibly alleges that the Bail Shop Defendants knew or should have known that Dennis White and John Doe were not licensed as bail recovery agents in New York (Doc. 41 ¶ 45), there are no allegations that the Bail Shop Defendants knew that its employees had engaged in tortious conduct in the past or would do so in this case. Although the Amended Complaint's allegations are sufficient to put Bail Shop on notice of Plaintiffs' claim that Bail Shop negligently hired, trained, retained, or supervised Dennis White and John Doe, *see Doe v. Intercont'l Hotels Grp., PLC*, 146 N.Y.S.3d 247, 249 (N.Y. App. Div. 2021), the Amended Complaint falls short of the Rule 12(b)(6) standard because Plaintiffs do not plausibly allege all of the necessary elements of the tort.

28

2.      **Non-delegable Duty**

"The 'nondelegable duty' exception may be invoked where a particular responsibility is imposed upon a principal by statute or regulation." *Chainani by Chainani v. Bd. of Educ. of City of New York*, 87 N.Y.2d 370, 381 (N.Y. 1995). Plaintiffs argue New York law creates a statutory duty to obtain a license issued in New York before doing "bail business" in New York, and Defendants' breach of this duty gives rise to liability for the torts of its independent contractors. McKinney's Insurance Law § 6802. As the Court of Appeals explained, statutes containing a "specific positive command" create a nondelegable duty, whereas those that merely incorporate "the ordinary tort duty of care," using terms like "adequate," "effective," or "suitable," do not. *Morris v. Pavarini Constr.*, 9 N.Y.3d 47, 50 (N.Y. 2007).

Section 2806(a) of the New York Insurance Law mandates that all persons, firms, and corporations doing "bail business" in New York "shall" be licensed by the superintendent as an agent. The statute also stipulates that "[e]very corporation . . . engaging as an insurer doing a bail business in this state shall procure a license . . . for each of its employees, officers and agents acting for it in soliciting, negotiating or effectuating any such deposit or bail bond." McKinney's Insurance Law § 2806(b). These sections impose specific positive commands to perform specific tasks and so impose a nondelegable duty upon Bail Shop Defendants.

The problem for Plaintiffs is that this statutory provision does not create any affirmative duty whose breach would give rise to tort liability. Engaging in bond business in New York without a license is not a tortious offense; it is a misdemeanor.[4] Although the Amended

---

[4] The New York statute is meaningfully different from comparable statutes in other contexts—such as construction—where the independent contractor's failure to abide a nondelegable statutory duty itself gives rise to the tortious action. *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 110–11 (2d Cir. 2012) (holding the employer could be held vicariously liable for independent contractors' negligence where

Complaint plausibly alleges that the bond agents conducted searches without the licenses required by statute, Dennis White and John Doe's failure to obtain licenses would not, if proven, give rise to any of the tortious activities alleged in the Amended Complaint. The nondelegable duty exception does not render Bail Shop Defendants liable for the alleged torts of its independent contractors.

### 3.   Inherently Dangerous Activity

Finally, the court considers whether the "inherently dangerous activity" exception to non-liability for independent contractors' torts applies. "Where the activity performed by a contractor is an inherently dangerous one, the negligence of the contractor may be imputed to the employer." *Petition of Alva S. S. Co., Ltd.*, 616 F.2d 605, 610 (2d Cir. 1980). An activity is inherently dangerous when it is "*necessarily* attended with danger—no matter how skillfully or carefully it is performed." 34 Am. Jur. Proof of Facts § 5 (2d ed. 1983). In determining whether an activity is abnormally dangerous, the following factors are considered:

> (a) existence of a high degree of risk of some harm to the person, land or chattel of others;
> (b) likelihood that the harm that results from it will be great;
> (c) inability to eliminate the risk by the exercise of reasonable care;
> (d) extent to which the activity is not a matter of common usage;
> (e) inappropriateness of the activity to the place where it is carried on; and
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) Torts § 520 (1965).

No court in New York has had the opportunity to decide whether working as a bail bondsman is an inherently dangerous activity. Courts in other jurisdictions have considered the

---

contractors ignored a statute mandating safety precautions around demolition sites). The statutory duty in New York is also narrower than in other states such as South Carolina which specifically require bail bondsmen to supervise their contractors' work. *See* S.C. Code Ann. § 38-53-120.

issue with differing outcomes. The Supreme Court of Washington found that "fugitive defendant apprehension" was not an "abnormally dangerous activity" but nevertheless posed "a peculiar risk of harm" subjecting a principal to liability for the negligence of its independent contractor. *Stout v. Warren*, 290 P.3d 972, 982 (Wash. 2012) (en banc) (citing Restatement (Second) of Torts § 416 (1965)). Emphasizing that "there is an indisputable danger inherent in the apprehension of one who has failed to answer to a charge levelled in a court of law," an Ohio court also concluded that the business of apprehending fugitives presents dangers to others "even if undertaken with the utmost precaution." *Hayes v. Goldstein*, 697 N.E.2d 224, 226 (Ohio Ct. App. 1997). A Montana district court disagreed, finding that "bounty hunting is not an abnormally dangerous activity," because bond agents can take reasonable precautions to reduce risks, and because cash bond provides an important social benefit. *Mitchell v. First Call Bail & Surety, Inc.*, 412 F. Supp. 3d 1208, 1220 (D. Mont. 2019).

The weight of the Restatement factors support a finding that the activities of armed bail enforcement agents are inherently dangerous. Apprehending fugitives at large, as with most other armed professions, carries a high degree of risk of some harm. *See, e.g., Waugh v. Dow*, No. CIV-11-1419-C., 2014 WL 2807574, at *1 (W.D. Okla. Jun. 20, 2014) (fugitive was shot in leg while fleeing agents); *Mitchell*, 412 F. Supp.3d at 1219 ("[b]ounty hunting creates a high degree of risk of harm. As weapons are regularly used in the act, the risk contemplated is death or serious bodily harm, which presents a likelihood that when harm occurs the harm will be great.") (Internal quotations omitted); *Paull v. Park Cnty.*, 218 P.3d 1198, 1202 (Mont. 2009) (holding that the "transportation of prisoners is, by its nature, a unique and inherently dangerous activity" because "those being transported are often persons charged with or convicted of serious criminal offenses."). Although the exercise of reasonable care can render the activity safer—for instance

through training or selection of the apprehension venue—the risk to the general public cannot be altogether eliminated. *Cf. State v. Portnoy*, 718 P.2d 805, 807 (Wash. Ct. App. 1986) (affirming assault convictions of bail bondsman who injured bailee's family members in attempt to capture bailee). Moreover, there is a risk that the bail agent's actions will cause the person being apprehended—or others in the vicinity—to react in a manner causing physical harm to others. The facts alleged in the Amended Complaint illustrate that even when bail enforcement agents take care to conduct apprehensions at private residences rather than in public areas, harms to third parties can still be expected to occur. This also weighs on the fifth factor since the activities of bail enforcement agents are not rendered appropriate in private dwellings, presumably the safest place to conduct searches and reduce collateral risks to others. The fourth factor also weighs in favor of a finding of unusual risks. Members of the general public are not usually subjected to the risk of others breaking into their homes or mistakenly apprehending them, nor would one expect to encounter the risk of being caught between armed bail agents and fugitive defendants in their home.

The final factor—whether the value to the community of apprehending those who fail to appear after posting cash bail is outweighed by its dangerous attributes—is a complex issue beyond the scope of this order. On the one hand, "the value of ensuring that those accused of a crime may be released prior to trial is of the utmost importance," and bail enforcement agents are perhaps a necessary component of this system. *Mitchell*, 412 F. Supp. 3d at 1220. On the other hand, deputizing private civilians to conduct armed home raids like those alleged here—with little government oversight—cannot be considered an activity that has much positive value for any community. On balance, this factor weighs in favor of finding bail enforcement to be an inherently dangerous activity. The court concludes bail enforcement activities are inherently

dangerous, and so Bail Shop Defendants can be held vicariously liable for the torts of their independent contractors arising out of those activities.

### 4.    Vicarious Liability for Unintentional Torts

Having concluded Bail Shop Defendants may be held vicariously liable for the torts of independent contractors under the inherently dangerous activity exception, the court pauses to address Plaintiffs' contention that Bail Shop may be held vicariously liable for the intentional as well as unintentional torts of its contractors. The Amended Complaint alleges that Bail Shop employed Adel Mikheail, and that Adel Mikheail contracted with Dennis White, an employee of Buffalo Bail Bonds Agency, to assist in the recovery of Luke Reinhardt. (Doc. 41 ¶¶ 21–22, 40–41.) The Amended Complaint further alleges that the Buffalo Bail Bonds and Police Defendants committed various torts—unintentional and intentional—while searching Plaintiffs' properties for Luke Reinhardt. (*Id.* ¶¶ 32, 52, 63–87, 97, 99–105, 110, 132). Performing searches to find a bail jumper is within the expected scope of employment for bail agents. Moreover, a factfinder could conclude that the commission of the alleged intentional torts—trespass, false imprisonment, assault, and battery—may be "reasonably expected" to occur during such searches. *Stewart*, 25 N.Y.S.3d at 661; *cf. Fauntleroy v. EMM Grp. Holdings LLC*, 20 N.Y.S.3d 22, 24 (N.Y. App. Div. 2015) (use of physical force was reasonably expected and within the scope of employment for security guards and bouncers); *Giambruno v. Crazy Donkey Bar & Grill*, 885 N.Y.S.2d 724, 728 (N.Y. App. Div. 2009) (same).

Because a reasonable factfinder could conclude Dennis White and John Doe committed intentional torts while acting within the scope of their duties as independent contractors, the Amended Complaint plausibly alleges the Bail Shop Defendants' vicarious liability for Defendants' tortious acts.

Of course, a prerequisite to Bail Shop's vicarious liability for any tort is the actual commission of a tort by Bail Shop agents or employees. The court next addresses whether the Amended Complaint contains sufficient factual allegations to support a claim for relief based on any of the tortious acts Defendants are alleged to have committed.

## B.    Intentional Torts of Unidentified Defendants

### 1.    Trespass (Count VII)

The Amended Complaint states a plausible claim for trespass. In New York, the elements of trespass are (1) an intentional (2) entry onto the land (3) of another (4) without permission. *See Ivory v. Int'l Bus. Mach. Corp.*, 983 N.Y.S.2d 110, 116 (N.Y. App. Div. 2014) (citing *Hand v. Stray Haven Humane Soc'y & S.P.C.A., Inc.*, 799 N.Y.S.2d 628 (N.Y. App. Div. 2005)). The Amended Complaint alleges that Dennis White and John Doe entered Plaintiffs' properties at 31 Oakdale Place and 1329 Clinton Street. (Doc. 41 ¶¶ 53, 87, 101, 139.) Defendants indicated to Plaintiffs that the purpose of their entry and search was locating Luke Reinhardt. (*Id.* ¶ 124.) Plaintiffs, who reside at the property, denied Defendants permission to enter. (*See id.* ¶¶ 68–77, 87, 139). Defendants did not present a warrant when requested to do so, and instead provided only a copy of a bail bond contract signed by Luke Reinhardt. (*Id.* ¶ 124.)  These allegations are sufficient to state a plausible claim that Defendants intentionally entered Plaintiffs' dwellings at 31 Oakdale Place and 1329 Clinton Street without Plaintiffs' permission. Moreover, these allegations support Plaintiffs' claim that the trespass occurred in the scope of Defendants' employment by Bail Shop. Consequently, the court denies Bail Shop's motion to dismiss Count VII.

### 2.    False Imprisonment (Count VIII)

In New York, the elements of false imprisonment are: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State*, 335 N.E.2d 310, 314 (N.Y. 1975). Neither actual malice nor want of probable cause are required. *Id.* The unprivileged detention of individuals during the search of a premises qualifies as "confinement." *Bacon v. Cnty. of Westchester*, 539 N.Y.S.2d 951, 952–53 (N.Y. App. Div. 1989) (mem.). Under this standard, the Amended Complaint states a plausible claim for false imprisonment.

The Amended Complaint alleges that Dennis White directed Plaintiffs not to move or leave their homes during their search. (Doc. 41 ¶ 89.) The Defendants used guns to enforce their orders. (*Id.* ¶¶ 90, 98, 101, 105–119.) These assertions support the inference that Defendants intended to confine Plaintiffs. Second, the Amended Complaint plausibly alleges that Plaintiffs were conscious of their confinement: it describes how Plaintiffs interacted with Dennis White and John Doe, received their orders, and followed them. (*Id.*) Buffalo Police Officer Defendants, at the direction and command of Dennis White and John Doe, surrounded the premises to make sure that Plaintiffs and their young children could not escape the building during the raid. (*Id.* ¶ 61.)

Third, the Amended Complaint includes multiple allegations that Plaintiffs expressly objected to the overall search, including their confinement. (*Id.* ¶¶ 100.) For example, the Amended Complaint alleges that Plaintiff Reinhardt said "'Get off my property!' and 'Show me your search warrant!'" (*Id.*) Last, the Amended Complaint alleges that Defendants failed to produce a warrant when requested to do so by Plaintiffs, and displayed only a bail bond contract

pertaining to Luke Reinhardt. (*Id.* ¶¶ 124–126.). It is reasonably inferable that the bail bond contract—to which Plaintiffs were not party—did not give the bail bond agents permission to enter Plaintiffs' property. Therefore, the Amended Complaint plausibly alleges that Defendants lacked a privilege that would justify Plaintiffs' confinement. The court denies Bail Shop's motion to dismiss Count VIII.

### 3.    Assault (Count IX)

In New York, assault in a civil action is "an intentional placing of another person in fear of imminent harmful or offensive contact." *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993). Other cases define the cause of action as "physical conduct placing the plaintiff in imminent apprehension of harmful contact." *Bastein v. Sotto*, 749 N.Y.S.2d 538, 539 (N.Y. App. Div. 2002). The plaintiff's fear of bodily harm must be reasonable. *See Carroll v. Bayeriche Landesbank*, 125 F. Supp. 2d 58, 65–66 (S.D.N.Y. 2000) ("[C]ircumstances inducing a reasonable apprehension of bodily harm, such as movements of drawing back a fist, aiming a blow, or the show of a weapon . . . ."). The Amended Complaint includes numerous allegations that Defendants placed Plaintiffs in fear of imminent harmful or offensive contact by pointing guns at them while asking threatening questions. (*E.g.*, Doc. 41 ¶¶ 1, 81, 89–99, 104–105, 108–110, 113, 139, 143–145.) Pointing a gun at a person will always create a reasonable fear of imminent bodily harm. Moreover, Plaintiffs experienced this conduct in the midst of an allegedly illegal home invasion in the middle of the night. Defendants alleged conduct is subjectively and objectively frightening. Bail Shop's motion to dismiss this count is denied.

### 4.    Battery (Count X)

Under New York law, the elements of battery are (1) the unjustified touching of another person, (2) without that person's consent, (3) with the intent to cause a bodily contact that a reasonable person would find offensive. *Rivera v. State*, 142 N.E.3d 641, 644–45 (N.Y. 2019). Although the Amended Complaint alleges that "Defendants touched and caused Plaintiffs to be touched in a harmful and offensive manner" (Doc. 41 ¶¶ 210, 269), this is nothing more than a recitation of the elements of the tort. The Amended Complaint lacks plausible, nonconclusory allegations of each of the elements of battery.

The closest the Amended Complaint comes to making the necessary showing is its allegation that Defendants "forced [Plaintiff] Reinhardt out of his home at gunpoint." (Doc. 41 ¶ 77.) However, even here, the Amended Complaint does not allege that Defendants actually *touched* Plaintiff. While the Amended Complaint contains numerous allegations supporting the claim that Defendants engaged in behavior that put Plaintiffs in fear of a battery, these allegations support, at most, the separate and distinct tort of assault. Because the Amended Complaint lacks sufficient allegations to support a plausible claim for battery against Defendants, the court grants Bail Shop's motion to dismiss this count.

### C.    Unintentional Torts

The Amended Complaint includes one remaining claim of the unintentional tort of negligence (Count XIII). In support of their negligence claim, Plaintiffs argue that Defendants "owed a duty to Plaintiffs to hire and utilize licensed bounty hunters who perform their bounty hunter duties without the use of excessive force," (Doc. 41 ¶ 291), and that their "use of force and threat to use force upon Plaintiffs" and "threat of bodily harm to imprison plaintiffs . . . constitutes negligence." (*Id.* ¶¶ 292, 294.)

The court has determined that the Amended Complaint plausibly alleges that Defendants committed several intentional torts during the searches, including trespass, false imprisonment, and assault. Count XIII seeks to hold Defendants liable for the same conduct under the alternative theory of negligence. But conduct that is intentional cannot also be negligent. *See, e.g.*, *Wahlstrom v. Metro-N. Commuter R. Co.*, 89 F. Supp. 2d 506, 532 (S.D.N.Y. 2000) (collecting cases holding that intentional conduct cannot form the basis of a negligence claim); *see also Robare Grp., Ltd. v. Sec. & Exch. Comm'n*, 922 F.3d 468, 479 (D.C. Cir. 2019). Under the Restatement (Second) of Torts, the definition of negligence "includes only such conduct" that "involves a risk and not a certainty of invading the interest of another. It therefore excludes conduct which creates liability because of the actor's *intention* to invade a legally protected interest of the person injured." Restatement (Second) of Torts § 282 cmt. d (emphasis added).[5] The Amended Complaint plausibly alleges that Defendants intentionally trespassed, assaulted, and falsely imprisoned Plaintiffs during their search of the residences. But the Amended Complaint does not articulate a theory or allege additional facts that would support the alternative conclusion that Defendants' trespass, assault, and intentional false imprisonment also constitute negligence.

Nevertheless, Fed. R. Civ. P. 8(d)(2) permits a party to "set out 2 or more statements of a claim . . . alternatively." It is possible that a reasonable factfinder could conclude at a later date that Plaintiffs' intentional tort claims are unsuccessful, but that they could proceed on a

---

[5] The Restatement (Third) of Torts maintains this distinction between intentional and negligent conduct. Under that Restatement, a person acts with intent if they "act[] with the purpose of producing" a particular consequence or if they "act[] knowing that consequence is substantially certain to result." Restatement (Third) of Torts § 1; *see also id.* § 2 (describing how recklessness can constitute intentional conduct). In contrast, a person is negligent where the person "does not desire to cause harm," *id.* § 1 cmt. d, but "does not exercise reasonable care under all the circumstances," *id.* § 3.

negligence theory. Consequently, the Bail Shop Defendants are entitled to dismissal of the negligence claim. The dismissal is without prejudice and Plaintiffs will be granted leave to amend this claim if necessary.

### D.   Negligent Hiring, Supervision, Retention & Training Claim (Count XIV)

In addition to seeking to hold Bail Shop vicariously liable for torts committed by Defendants, the Amended Complaint also includes a claim against Bail Shop, Adel Mikheail, and Buffalo Bail Bonds for negligent hiring, supervision, retention, and training of Defendants Dennis White and John Doe.

This tort "appl[ies] only in instances where an employer cannot be held vicariously liable for an employee's torts." *Harisch v. Goldberg*, No. 14-CV-9503 (KBF), 2016 WL 1181711, at *14 (S.D.N.Y. Mar. 25, 2016) (cleaned up). For an employer to be liable for negligent hiring, supervision, or training, "[t]he employee . . . must not be acting within the scope of his or her employment; in that situation the employer could only be liable, if at all, vicariously under the theory of respondeat superior." *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 446 (N.Y. App. Div. 2011); *see also Rowley v. City of N.Y.*, No. 00 Civ. 1793 (DAB), 2005 WL 2429514, at *13 (S.D.N.Y. Sept. 30, 2005) ("[W]here a defendant employer admits its employees were acting within the scope of their employment, an employer may not be held liable for negligent hiring, training, and retention as a matter of law."). Ultimately, therefore, Bail Shop and Mr. Mikheail may only be liable for only their own negligence—in the hiring, training, or supervision of its employees—or only for the intentional torts of their employees on a theory of vicarious liability.

As discussed above, the court finds Plaintiffs have not plausibly alleged a negligent hiring claim. At the motion to dismiss stage, however, the court need not conclusively determine

on which theory the case moves forward. Fed. R. Civ. P. 8(d)(2) permits a party to "set out 2 or more statements of a claim . . . alternatively or hypothetically." *See also Lawrence v. Wilder Richman Sec. Corp.*, 417 F. App'x 11, 13 (2d Cir. 2010) (summary order); *Woodnotch Farms, Inc. v. Agri-Mark, Inc.*, No. 2:20-CV-180, 2021 WL 1387112, at *7 (D. Vt. Apr. 13, 2021). The court has already determined that the Amended Complaint contains sufficient allegations to support a factual finding that the Bail Shop Defendants are vicariously liable for the torts of the alleged contractors. However, if the factfinder ultimately were to conclude that Defendants acted outside the scope of their employment during the January 2021 searches, then a condition precedent to vicarious liability would be absent. The question for the factfinder would then become whether the Bail Shop Defendants are nevertheless liable for the negligent training, supervision, retention, or hiring of Defendants Dennis White and John Doe. Consequently, the court will dismiss the negligent training claim without prejudice, and allow Plaintiffs leave to amend this claim if necessary.

## **Conclusion**

Bail Shop and Adel Mikheail's second motion to dismiss (Doc. 57) is GRANTED IN PART and DENIED IN PART. The motion is denied with respect to Counts VII–IX for both Defendants and to Count V for Adel Mikheail. Count V is dismissed with prejudice against Bail Shop. Counts X–XII are dismissed with prejudice against both Defendants. Counts XIII and XIV are dismissed without prejudice. Plaintiffs have 30 days from the date of publication of this order to either identify and serve John Doe, or file a motion for an extension of time for service, no more than 10 pages in length.

Dated this 5th day of July, 2022.

Geoffrey W. Crawford, Judge
United States District Court