# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

JAKE M. REINHARDT
31 Oakdale Place
Buffalo, New York 14210

TAYLOR M. SCHMIEDER
31 Oakdale Place,
Buffalo, New York 14210

KEVIN R. HARRINGTON
31 Oakdale Place
Buffalo, New York 14210

CASEY E. CARMINATI
31 Oakdale Place
Buffalo, New York 14210

KRYSTYNA KIMBRELL
1329 Clinton Street
Buffalo, New York 14206

        Plaintiffs,

v.

THE CITY OF BUFFALO
c/o Corporation Counsel
65 Niagara Street, 1100 City Hall
Buffalo, New York  14202

CLAYTON REED, individually and in his
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

MELISSA KURDZIEL, individually and in her
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

**SECOND AMENDED
VERIFIED COMPLAINT
AND JURY DEMAND**

Civil Action No.: 21-CV-206

JAE S. MURPHY, individually and in his
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

SPENCER T. GEORGE, individually and in his
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

ROBERTO J. TORRES, individually and in his
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

COLIN KEENAN, individually and in his
capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

DEVON SALTER-BROWN, individually and in
his capacity as a City of Buffalo Police Officer,
68 Court Street
Buffalo, New York 14202

BAIL SHOP, LLC
760 Cumberland Street
Lebanon, PA 17042

ADEL MIKHEAIL, individually and in
his capacity as a bail recovery agent for
Bail Shop, LLC
760 Cumberland Street
Lebanon, PA 17042

BUFFALO BAIL BONDS AGENCY, INC.
112 Franklin Street, Suite 1
Buffalo, New York 14202

DENNIS WHITE, individually and in his
capacity as a bail recovery agent for Buffalo Bail
Bonds Agency, Inc.
494 Goodyear Avenue,
Buffalo, New York 14211

2

WAYNE BRYANT, individually and in his
capacity as a bail recovery agent for Buffalo Bail
Bonds Agency, Inc.
494 Goodyear Avenue,
Buffalo, New York 14211

       Defendants.

Plaintiffs, Jake M. Reinhardt, Taylor M. Schmieder, Kevin R. Harrington, Casey

E. Carminati, and Krystyna Kimbrell (collectively referred to as "Plaintiffs") by their attorneys,

Rupp Baase Pfalzgraf Cunningham LLC, as and for their second amended verified complaint

against Defendants, the City of Buffalo, Officers Reed, Kurdziel, Murphy, George, Torres,

Keenan, and Brown, individually and in their capacity as a City of Buffalo police officers, Bail

Shop, LLC, Adel Mikheail, Buffalo Bail Bonds Agency, Inc., Dennis White, and Wayne Bryant,

individually and in his capacity as a bail recovery agent for Buffalo Bail Bonds Agency, Inc.

(collectively referred to as "Defendants"), hereby allege as follows:

## PRELIMINARY STATEMENT

1.      On January 9, 2021 and again on January 10-11, bail recovery agents from

Pennsylvania and Buffalo—accompanied, aided, assisted, and abetted by City of Buffalo Police

acting in the course of their employment by the City of Buffalo—burst into Plaintiffs' homes

located at 1329 Clinton Street and 31 Oakdale Place in the City of Buffalo at gunpoint and

engaged in a violent, terrifying, warrantless searched of the premises while trying to locate an

alleged bond-jumper who was not present and did not reside at either address.  The Defendants

conspired to and did unlawfully enter and search the Plaintiffs' homes armed with drawn

firearms, terrorizing Plaintiffs and their young children and placing them in fear for their lives by

holding them hostage in their own homes.  By way of this action, Plaintiffs seek damages and the vindication of their rights under the United States Constitution.

## JURISDICTION AND VENUE

2.      This action is brought under 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the Plaintiffs' constitutional and civil rights.

3.      Plaintiffs further invoke this Court's pendent jurisdiction, pursuant to 28 U.S.C. § 1367(a), over all state law claims and as against parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

4.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of New York because the events forming the basis of Plaintiffs' amended verified complaint occurred in this District.

## PARTIES

5.     At all times relevant to this action, Plaintiff Jake M. Reinhardt was and is a resident of Erie County, New York, and was at all times relevant herein residing with his family in the lower apartment at 31 Oakdale Place, Buffalo, New York 14210.

6.     At all times relevant to this action, Plaintiff Taylor M. Schmieder was and is a resident of Erie County, New York, and was at all times relevant herein residing with her family in the lower apartment at 31 Oakdale Place, Buffalo, New York 14210.

7.     At all times relevant to this action, Plaintiff Kevin R. Harrington was and is a resident of Erie County, New York, and was at all times relevant herein residing with his family in the upper apartment at 31 Oakdale Place, Buffalo, New York 14210.

8.     At all times relevant to this action, Plaintiff Casey E. Carminati was and is a resident of Erie County, New York, and was at all times relevant herein residing with her family in the upper apartment at 31 Oakdale Place, Buffalo, New York 14210.

9.     At all times relevant to this action, Plaintiff Krystyna Kimbrell was and is a resident of Erie County, New York, and was at all times relevant herein residing at 1329 Clinton Street, Buffalo, New York 14206.

10.     Defendant, the City of Buffalo, was and is a municipal corporation duly organized and existing under the laws of the State of New York and has a business address at City Hall, 65 Niagara Square, Buffalo, New York 14202.

11.     At all times hereinafter mentioned, the City of Buffalo has operated and continues to operate a municipal police department under the command of Police Commissioner Byron Lockwood.

12.     Defendant, the City of Buffalo, through its Common Council, City Counsel, and their officers, agents, servants, employees, and/or their specialized units, promulgate, implement, review, and/or enforce, as policymakers, certain policies regarding the conduct and actions of police officers employed by the City of Buffalo, including the Buffalo Police Department Defendants.

13.     Defendant, Clayton Reed, was and is a resident of the County of Erie, and State of New York.  At all times hereinafter mentioned, he was and is a Police Officer employed by the City of Buffalo and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  Defendant Reed is being sued in his individual capacity for damages caused by his actions and conduct.

14.     Defendant, Melissa Kurdziel, was and is a resident of the County of Erie, and State of New York.  At all times hereinafter mentioned, she was and is a Police Officer employed by the City of Buffalo and was acting within the scope of her employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  Defendant Kurdziel is being sued in her individual capacity for damages caused by his/her actions and conduct.

15.     Defendant, Jae S. Murphy, was and is a resident of the County of Erie, and State of New York.  At all times hereinafter mentioned, he was and is a Police Officer employed by the City of Buffalo and was acting within the scope of his employment and official capacity as a police officer at the time of the incident giving rise to this lawsuit.  Defendant Murphy is being sued in his individual capacity for damages caused by his/her actions and conduct.

16.     Defendant, Spencer T. George, was and is a resident of the County of Erie, and State of New York.  At all times hereinafter mentioned, he was and is a Police Officer

employed by the City of Buffalo and was acting within the scope of his employment and official

capacity as a police officer at the time of the incident giving rise to this lawsuit. Defendant

George is being sued in his individual capacity for damages caused by his actions and conduct.

17.     Defendant, Roberto J. Torres, was and is a resident of the County of Erie,

and State of New York. At all times hereinafter mentioned, he was and is a Police Officer

employed by the City of Buffalo and was acting within the scope of his employment and official

capacity as a police officer at the time of the incident giving rise to this lawsuit. Defendant

Torres is being sued in his individual capacity for damages caused by his actions and conduct.

18.     Defendant, Colin Keenan, was and is a resident of the County of Erie, and

State of New York. At all times hereinafter mentioned, he was and is a Police Officer employed

by the City of Buffalo and was acting within the scope of his employment and official capacity

as a police officer at the time of the incident giving rise to this lawsuit. Defendant Keenan is

being sued in his individual capacity for damages caused by his actions and conduct.

19.     Defendant, Devon Salter-Brown, was and is a resident of the County of

Erie, and State of New York. At all times hereinafter mentioned, he was and is a Police Officer

employed by the City of Buffalo and was acting within the scope of his employment and official

capacity as a police officer at the time of the incident giving rise to this lawsuit. Defendant

Brown is being sued in his individual capacity for damages caused by his actions and conduct.

20.     Defendant Bail Shop, LLC ("Bail Shop"), a surety bail bonds-company, is

a foreign corporation with its principal place of business located in Lebanon, Pennsylvania.

Upon information and belief, Bail Shop is qualified to serve as a bail bondsman within the

Commonwealth of Pennsylvania. Bail Shop purposefully has availed itself of and subjected

itself to the laws of the State of New York as its bail enforcement agent Adel Mikheail ordered,

7

supervised, conducted, and participated in the acts complained of in Buffalo, New York, as alleged below.

21.    Adel Mikheail is a citizen of the Commonwealth of Pennsylvania and was at all times relevant herein residing at 318 Clicko Lane East, Stroudsburg, PA 18301.  Adel Mikheail committed the actions alleged herein while employed as a bail recovery agent for Bail Shop.  At all times hereinafter mentioned, Adel Mikheail was acting within the scope of his employment and official capacity as a bail recovery agent for Bail Shop at the time of the incident giving rise to this lawsuit.  Adel Mikheail is being sued in his individual capacity for damages caused by his actions and/or conduct.

22.    Buffalo Bail Bonds Agency, Inc. ("Buffalo Bail Bonds"), a surety bail bonds-company, is a domestic corporation organized and existing under the laws of the State of New York.  Upon information and belief, Defendant Buffalo Bail Bonds either contracted by itself or in conjunction with Bail Shop to apprehend Luke Reinhardt and return him to Pennsylvania as set forth in more particularity below.

23.    Dennis White is a citizen of the State of New York.  Dennis White is a bail recovery agent employed by Buffalo Bail Bonds.  At all times hereinafter mentioned, Dennis White was acting within the scope of his employment and official capacity as a bail recovery agent for Buffalo Bail Bonds at the time of the incident giving rise to this lawsuit.  Defendant Dennis White is being sued in his individual capacity for damages caused by his actions and/or conduct.

24.    Upon information and belief, Wayne Bryant is a citizen of the State of New York.  Upon further information and belief, Wayne Bryant is a bail recovery agent employed by Buffalo Bail Bonds.  At all times hereinafter mentioned, Wayne Bryant was acting

8

within the scope of his employment and official capacity as a bail recovery agent for Buffalo

Bail Bonds at the time of the incident giving rise to this lawsuit.  Defendant Wayne Bryant is

being sued in his individual capacity for damages caused by his actions and/or conduct.

       25.    At all relevant times, Defendants, either personally or through their

employees, were acting under the color of law and/or in compliance with the official rules,

regulations, laws, statutes, policies, customs, ordinances, usages and/or practices of the private

and public corporations named herein.  Defendants' actions and conduct show that they did not,

nor could they, reasonably rely upon any existing law to justify their actions and conduct.


### STATEMENT OF FACTS

#### Unlawful Armed Intrusion and Search of 31 Oakdale Place (January 10-11, 2021)

       26.    Plaintiffs Jake Reinhardt and Taylor Schmieder reside at the premises

located at 31 Oakdale Place, Buffalo, New York 14210.

       27.    31 Oakdale Place is a two-family home owned in fee by Jake Reinhardt

with separate upstairs and downstairs apartments.

       28.    Plaintiffs Reinhardt and Schmieder live in the downstairs apartment with

their three-year-old daughter.

       29.    At the time of the incidents in question, Plaintiff Schmieder was eight

months pregnant with the couple's second child.

       30.    Plaintiffs Kevin Harrington and Casey Carminati are rent-paying tenants

of Jake Reinhardt who reside in the upstairs apartment with their 18-month-old son and their

five-year-old daughter.  They are not related to Jake Reinhardt or Luke Reinhardt.

31.     In the late hours of January 10, 2021, Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati and their young children all were at home in their respective apartments at 31 Oakdale Place peacefully sleeping in their beds.

32.     At or about midnight on Sunday night, January 10-11, 2021, Defendants Dennis White, Wayne Bryant, and the Buffalo Police Department Defendants, including City of Buffalo A-District Officers Murphy, George, Torres, Keenan, and Brown, acting in coordinated fashion in concert with each other in a joint operation, approached 31 Oakdale Place wearing face masks with weapons drawn as well as holstered, attired in police uniforms, jackets, gear, and bulletproof vests.

33.     Upon information and belief, the Defendants were looking for an individual named Luke Reinhardt, who apparently had his bond revoked for failure to appear in court in Lebanon, Pennsylvania.

34.     Luke Reinhardt is the brother of Plaintiff Jake Reinhardt.

35.     Luke Reinhardt never has resided in either apartment of 31 Oakdale Place.

36.     The underlying offenses for which Luke Reinhardt was charged, upon information and belief, were misdemeanors for simple assault, retail theft, and driving while operating privileges were suspended or revoked.  His bail was set at $5,000.

37.     Upon information and belief, the charges were being prosecuted by the Lebanon County District Attorney's Office, and Luke Reinhardt was scheduled to appear in the Court of Common Pleas of Lebanon County.  Upon information and belief, Luke Reinhardt did not appear at the scheduled date and time.

38.     Bail Shop hired Pennsylvania bail recovery agent Adel Mikheail to locate and return Luke Reinhardt to appear for his next scheduled court date.  Upon information and

belief, Bail Shop regularly hires and uses Adel Mikheail as a bail recovery agent to locate and return alleged bond-jumpers.

39.     Upon information and belief, during his investigation to locate and return the alleged bond-jumper, Adel Mikheail learned that Luke Reinhardt likely was traveling in the City of Buffalo.

40.     Upon learning that Luke Reinhardt likely was traveling in the City of Buffalo, Adel Mikheail contacted Dennis White to assist him with locating and returning Luke Reinhardt.

41.     Upon information and belief, Adel Mikheail contacted Dennis White to assist him with the recovery of Luke Reinhardt because Mr. Mikheail is not licensed as a bail recovery agent in the State of New York.  Although he is not licensed, Adel Mikheail supervised and coordinated the illegal and horrifying raids described herein as an agent employed by Bail Shop.

42.     Under the laws of New York State, neither a business nor an individual may engage in employment for the recovery of alleged bond jumpers unless properly licensed by the Department of State for the State of New York.  *See* New York General Business Law § 70-a(2).

43.     Upon information and belief, neither Defendant Dennis White nor Wayne Bryant are licensed as bail recovery agents in the State of New York.

44.     Although they are not licensed to engage in the business of bail enforcement agents in the State of New York, upon information and belief, Buffalo Bail Bonds employed and regularly engaged Defendants Dennis White and Wayne Bryant as bail recovery agents for the recovery of alleged bond-jumpers in the City of Buffalo.

11

45.     Upon information and belief, Defendants Bail Shop, Adel Mikheail, and Buffalo Bail Bonds knew, or with reasonable diligence should have known, that Defendants Dennis White and Wayne Bryant were not licensed as bail recovery agents in the State of New York, and further knew or should have known that the laws of the State of New York require a business or individual to be licensed before engaging in the business of a bail recovery agent. Despite such knowledge, Defendants Bail Shop, Adel Mikheail, and Buffalo Bail Bonds regularly employed and utilized the services of Defendants Dennis White and Wayne Bryant for engaging in the business of bail recovery agents.

46.     The State of New York has promulgated basic safeguards to ensure that only individuals who properly are licensed engage in the business of bail recovery agents in the State of New York.

47.     Those basic safeguards include the obligation of a licensed bail recovery agent to notify a local law enforcement agency of the agent's intention to locate and return an alleged bond-jumper located in the jurisdiction of the local law enforcement agency. *See* New York's General Business Law § 74-a.  Upon receipt of such notification, the local law enforcement agency must require that the bail recovery agent complete a form disclosing basic information about the agent. *Id.*

48.     Upon information and belief, prior to the incidents alleged herein, the City of Buffalo failed to comply with New York General Business Law § 74-a because it did not have a procedure in place to verify the identity and license status of the bail recovery agents who engaged in such business in the City of Buffalo.  Specifically, before the illegal and horrifying raids that took place on January 9, and 10-11, 2021, upon receiving notification from a bail recovery agent of his intention to locate and return an alleged bond-jumper traveling in the City

of Buffalo, the City of Buffalo Police Department did not have and/or did not have a policy in place requiring City employees to issue to the bail recovery agent the form required by New York General Business Law § 74-a.

49.     Because the City of Buffalo Police Department did not have such a procedure in place and/or did not enforce compliance with the procedure, the City of Buffalo Police Department failed to ensure that individuals and businesses engaged in the business of bail recovery agents properly were licensed to engage in such work in the State of New York.

50.     Because the City of Buffalo Police Department failed in its statutory obligation to verify the license status of individuals and businesses engaged in the business of bail recovery agents, individuals and businesses were given free rein to engage in the business of bail recovery agents regardless of license status.

51.     The lack of oversight by the City of Buffalo and compliance with its statutory obligations placed the citizens of the City of Buffalo at an unreasonable risk of harm and did cause and/or substantially contribute to the horrifying and unreasonably dangerous raids described herein.

52.     On the evening of January 10-11, 2021, as part of the mission coordinated by Bail Shop and Adel Mikheail to locate and find alleged bond jumper Luke Reinhardt, Defendants Dennis White and bail recovery agent Wayne Bryant walked up the steps to the front porch at 31 Oakdale Place with weapons drawn. These weapons are believed to be a shotgun and an AR-15 semi-automatic rifle. Both defendants also wore holstered handguns on their hips.

53.     As Defendants Dennis White and Wayne Bryant entered the front porch of the residence, they used hand gestures to command two Buffalo Police Officers to go around to

the rear of the premises.  The Buffalo Police Officers followed these commands and proceeded down the adjacent driveway to the rear of the premises.

54.     Upon information and belief, Defendants Dennis White and Wayne Bryant congregated and met with City of Buffalo A-District Officers Jae S. Murphy, Spencer T. George, Roberto J. Torres, Colin Keenan, and Devon Salter-Brown prior to conducting the raid at 31 Oakdale Place.

55.     City of Buffalo Police Officers Murphy, George, Torres, Keenan, and Brown were dispatched to assist Defendants Dennis White and Wayne Bryant with the raid at 31 Oakdale Place.

56.     Upon information and belief, City of Buffalo Police Officers Murphy, George, Torres, Keenan, and Brown were inexperienced and/or recently hired as a City of Buffalo police officer at the time of the incidents, and City of Buffalo Police Department supervisors knew, or should have known, that these inexperienced officers were not properly trained to monitor the recovery of an alleged bond-jumper.

57.     After learning the intentions of Defendants Dennis White and Wayne Bryant during the pre-raid huddle to search 31 Oakdale Place for alleged bond-jumper Luke Reinhardt, at no time did Officers Murphy, George, Torres, Keenan, or Brown ask Defendant White or Wayne Bryant whether they had a search warrant or other lawful authority to search 31 Oakdale Place for Luke Reinhardt.

58.     At no time prior to the raid at 31 Oakdale Place did Officers Murphy, George, Torres, Keenan, or Brown verify whether Defendants Dennis White or Wayne Bryant were licensed in the State of New York as bail recovery agents.  In fact, upon information and belief, the on-scene officers believed that Defendants Dennis White and Wayne Bryant were

14

bounty hunters from Pennsylvania, which should have heightened their suspicions as to whether Defendants White and Wayne Bryant were licensed as bounty hunters in the State of New York.

59.     At no time did Officers Murphy, George, Torres, Keenan, or Brown question the authority of Defendants Dennis White and Wayne Bryant to enter and search Plaintiffs' residences at 31 Oakdale Place.

60.     Defendants Dennis White and Wayne Bryant then approached 31 Oakdale Place with the City of Buffalo Police Officers following closely behind.  As Defendants Dennis White and Wayne Bryant approached the front door, Officers Murphy, George, Torres, Keenan, and Brown surrounded 31 Oakdale Place.

61.     Upon information and belief, the City of Buffalo Police Officers surrounded 31 Oakdale Place to make sure that the individuals in the homes, including the Plaintiffs and their young children, did not escape the building during the raid.  Upon further information and belief, Officers Murphy, George, Torres, Keenan, and Brown surrounded 31 Oakdale Place at the direction and command of Defendants Dennis White and Wayne Bryant.

62.     Defendant Dennis White grasped the doorknob of the front door, apparently intending to enter the premises uninvited, but found the door to be locked. Thereafter, after peering in the front windows of the structure, he began loudly pounding on the front door.

63.     As seen on the Plaintiffs' home surveillance cameras, two of the Buffalo Police Department Defendants initially stood on the sidewalk in front of the premises, then climbed the porch steps and stood on the porch, and later entered the premises through the front door in support of the joint operation with the other defendants.

64.     Meanwhile, the remaining Buffalo Police Department Defendants stood on the sidewalk before or the street before 31 Oakdale Place, also assisting in the operation.

65.     Upon information and belief, Defendants George and Torres positioned themselves in the rear of the residence to ensure that no one could flee or otherwise escape during the operation.

66.     The actions of Buffalo Police Department defendants were performed in furtherance of the joint police/private operation coordinated and planned by Bail Shop, Adel Mikheail, and Buffalo Bail Bonds with Defendants Dennis White, Wayne Bryant, and the other Defendants.

67.     At approximately midnight on the evening of January 10-11, 2021, Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati were startled from their sleep by a loud pounding on the front door of 31 Oakdale Place caused by Defendant Dennis White.

68.     Defendant Dennis White then loudly and forcefully told the residents at 31 Oakdale Place to "Open it up or we're (sic) kick it in!"

69.     Plaintiff Reinhardt cautiously approached the front door from the inside of the apartment and asked from behind the closed front door "Who's that?"

70.     Defendant Dennis White then immediately raised his shotgun and repeated "Open up or we're (sic) kick it in."

71.     Plaintiff Reinhardt repeated his question again: "Who is that?"

72.     Defendant Dennis White forcefully repeated his command: "Come down. Open the door."

73.     Defendant Wayne Bryant told Defendant Dennis White "He's in the window."

16

74. Defendant Dennis White loudly and forcefully repeated his command: "Open the door, now!"

75. Having seen uniformed officers from the Buffalo Police Department on and near his property, Plaintiff Reinhardt thought that it would be safe for him to open his door. In so doing, he did not intend to allow or give consent for anyone to enter his property. He cautiously opened the front door and told Defendants: "My hands are up, man."

76. Defendant Dennis White and bail recovery agent Wayne Bryant then stood in front of the front door and raised their shotguns pointing them at Mr. Reinhardt as he opened the door.

77. The Defendants then forced Mr. Reinhardt out of his home at gunpoint. Mr. Reinhardt was shirtless and shoeless in the middle of winter on a cold January night. City of Buffalo Police Department defendants fully participated in and lent support to this the activity and failed to intervene and prevent it.

78. At no time did any of the defendants present a warrant allowing them to conduct an armed search of the premises.

79. Defendant Dennis White asked Mr. Reinhardt for his name.

80. Mr. Reinhardt responded: "Jake Reinhardt."

81. Mr. Reinhardt at this point had a shotgun pointed directly at him and was visibly shaken and feared for the safety of himself, his family, and his tenants. He asked Defendant Dennis White and bail recovery agent Wayne Bryant "Why do you have a gun drawn? Please put that gun down."

82. Defendant Dennis White then asked Mr. Reinhardt "Where is Luke?"

17

83.     Mr. Reinhardt responded: "Luke is not here.  I have a three-year old daughter in there.  You have a gun drawn on me right now.  Luke does not reside here, man."

84.     Mr. Reinhardt then repeated: "Luke is not here."

85.     Defendant Dennis White and Defendant Wayne Bryant were attired in gear designed to make them look like police officers.  At least one of them was wearing a jacket with the logo "United States Fugitive Task Force" on the back that also sported a shield emblem which resembled that of a police badge.

86.     Upon information and belief, however, Defendant Dennis White and Wayne Bryant were impersonating law enforcement personnel and were additionally working in concert with uniformed officers from the Buffalo Police Department to make their illegal actions appear official.

87.     Without displaying a warrant, without warning, and without consent or any other form of permission from Plaintiffs Reinhardt, Schmieder, Harrington, or Carminati or their infant- and toddler-aged children, Defendants Dennis White and Wayne Bryant entered the residence at 31 Oakdale Place and began to search the premises.

88.     Upon information and belief, none of the defendants had a lawful warrant issued by a judicial officer to enter or search the premises located at 31 Oakdale Place, Buffalo, New York 14210.

89.     As Defendant Dennis White was entering the home, he told Mr. Reinhardt "Don't Move!"  Defendant Wayne Bryant pointed his weapon at Mr. Reinhardt while Defendant Dennis White told him not to move.

90.     As Defendant Dennis White was entering the home, Mr. Reinhardt told the Defendants "Listen, my three-year old daughter is in there, my wife is in the back room

sleeping." Mr. Reinhardt then repeated "Please put that gun down. You're pointing that gun at me. Please put the gun down. Please put the barrel of the gun down."

91.     Defendant Dennis White coldly told Mr. Reinhardt: "Secure your family."

92.     Mr. Reinhardt started to walk into the home and then asked Defendant Dennis White "Do you have a search warrant for this house?"

93.     Defendant Dennis White responded: "Yes I do."

94.     Mr. Reinhardt asked Defendant Dennis White to see the search warrant, and Defendant Dennis White responded: "You will see it soon."

95.     Defendant Dennis White then asked Mr. Reinhardt repeatedly if he had any weapons. Apparently dissatisfied with the response he received, he ordered Mr. Reinhardt to exit the house once again. Mr. Reinhardt remained shirtless and shoeless in the cold, outdoor air.

96.     Defendant Wayne Bryant followed Defendant Dennis White into the residence at 31 Oakdale Place.

97.     Defendants Murphy and a second City of Buffalo police officer walked up the front steps, stepped onto the front porch, and then crossed the threshold of the front door at 31 Oakdale Place, entering the premises without a search warrant.

98.     While being held at gunpoint, Mr. Reinhardt asked the Buffalo Police officers for help: "Are you Buffalo? You guys are letting this happen?"

99.     Mr. Reinhardt's three-year-old daughter woke up during the armed intrusion and began to cry.

100.     Mr. Reinhardt told Defendant Murphy and the other officer who were positioned in and around the foyer of his residence to: "Get off my property!" and "Show me your search warrant!"

101.    Over the course of the armed intrusion, Defendants Dennis White and Wayne Bryant entered the home through the front door at 31 Oakdale Place and searched the home with flashlights and guns drawn.  Buffalo Police defendants entered the home through the front and back doors, participating in the joint operation.

102.    Defendants Dennis White and Wayne Bryant encountered Mr. Reinhardt's pregnant fiancé, Plaintiff Taylor Schmieder, in the apartment holding their three-year old daughter in her arms.

103.    Upon information and belief, Defendants Dennis White and Wayne Bryant were startled when they encountered Plaintiff Schmieder, although Mr. Reinhardt had informed them that his wife and three-year old daughter were together in the back of the apartment.

104.    Defendants Dennis White and Wayne Bryant pointed their weapons and flashlights at Plaintiff Schmieder and ordered her to put her three-year old daughter down and put her hands up.

105.    Plaintiff Schmieder and her three-year old daughter were held at gun point without Defendant Dennis White, Defendant Wayne Bryant, or any of the other defendants identifying themselves as law enforcement officers or producing a search warrant as requested and demanded by Plaintiff Reinhardt.

106.    Defendants Dennis White and Wayne Bryant illegally searched the entire lower apartment at gunpoint looking for Luke Reinhardt, an individual who did not and never had lived at 31 Oakdale Place.  Previously, Defendant Dennis White had been told by Jake Reinhardt that Luke Reinhardt did not reside with him and his family at 31 Oakdale Place.

107.    Defendants Dennis White and Wayne Bryant did not have probable cause to believe that Luke Reinhardt was at the premises, did not have a search warrant to search

20

31 Oakdale Place, and did not receive consent from Plaintiffs Reinhardt, Schmieder, Harrington, or Carminati or their young children to search the premises.

108.    Defendants Dennis White and Wayne Bryant brandished firearms and held Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati at gunpoint so that they could question Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati at gunpoint about Luke Reinhardt's whereabouts.

109.    Defendants Dennis White and Wayne Bryant questioned Mr. Reinhardt's eight-months pregnant fiancé at gunpoint.

110.    Mr. Reinhardt suffered great emotional and psychological distress as he watched his fiancé and three-year old daughter crying in fear while being held at gunpoint.

111.    Mr. Reinhardt repeatedly demanded that all defendants leave the premises, but they refused to depart.

112.    Despite knowing that the upstairs residence was an entirely separate home occupied by Plaintiffs Harrington and Carminati, two individuals with no relation to Luke Reinhardt, Defendants Dennis White and Wayne Bryant broke the door to the upstairs apartment and proceeded to search the upstairs apartment for Luke Reinhardt.

113.    The baby monitor in the upstairs apartment captured Defendants Dennis White and Wayne Bryant searching their child's room with flashlights and guns drawn. Because bail recovery agents held flashlights along the barrels of their long guns, when they pointed the flashlight at the five-year-old daughter of Plaintiffs Harrington and Carminati, the weapon was pointed directly at the child.

114.    While Defendants Dennis White and Wayne Bryant were searching the home, City of Buffalo Police Officers stood on the front porch, failing to intervene or stop the

violent intrusion into the Plaintiffs' apartments.  Eventually, Buffalo Police Officers entered the

home in furtherance of the operation, also without probable cause and without a warrant.

115.    Although willingly participating in a joint operation with Defendants

Dennis White and Wayne Bryant, the two City of Buffalo Police Officers standing on the front

porch said to each other "I don't even know what agency they are part of" and "Me, neither.  I

think they're from PA."

116.    None of the Buffalo Police Department Defendants on scene intervened

when Plaintiff Reinhardt asked to see a search warrant and ordered the Defendants to leave the

premises.  The Buffalo Police Department defendants continued to assist, aid, and abet the joint

operation throughout the armed intrusion.

117.    After they had finished intruding, damaging, and searching the premises,

Defendants Dennis White and Wayne Bryant exited the premises through the front door.

118.    As they exited, Mr. Reinhardt reiterated his demand to see a warrant.

119.    Defendant Dennis White informed Mr. Reinhardt: "When I get to the car,

I'll give it to you."

120.    Mr. Reinhardt continued to tell Defendant Dennis White that he wanted to

see a search warrant as Defendant Dennis White, Wayne Bryant, and the Buffalo Police

Department Defendants started to walk away.  Mr. Reinhardt told Defendant Dennis White:

"Don't go anywhere without showing me a warrant."

121.    Mr. Reinhardt walked down the front steps of his porch towards

Defendant Dennis White and the Buffalo Police Department officers.

122.    The Buffalo Police Department Defendants ignored Plaintiff Reinhardt's

demand for a warrant.

123.     Instead, the Defendants threatened Mr. Reinhardt "not to walk up on them" despite Mr. Reinhardt's insistence that he be provided a warrant or an explanation for the operation.

124.     Not one of the Defendants produced a search warrant.  Instead, upon information and belief, they showed him a bail bond contract signed by Luke Reinhardt in Pennsylvania.

125.     Jake Reinhardt previously had informed Defendant Dennis White that Luke Reinhardt did not live at 31 Oakdale Place and that he was not present there.

126.     The Buffalo Police Department Defendants failed to arrest Defendant Dennis White and/or Wayne Bryant when it became clear that they did not have a warrant, thus endorsing, aiding, and perpetuating the illegal actions of those Defendants.

127.     After the Defendants left, Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati tried to comfort their children and go back to bed and sleep as the next day was a workday.

128.     However, Plaintiffs Reinhardt, Schmieder, Harrington, and Carminati were too upset and shocked by the events that took place and could not fall back asleep.

**Unlawful Armed Intrusion and Search of 1329 Clinton Street (January 9, 2021)**

129.     On Saturday, January 9, 2021, Defendants approached the premises at 1329 Clinton Street, Buffalo, New York 14206 in search of Luke Reinhardt.

130.     Plaintiff Krystyna Kimbrell resides in the premises located at 1329 Clinton Street, Buffalo, New York 14206.

131.     Plaintiff Krystyna Kimbrell is the mother of Luke Reinhardt.

23

132.     Like the incident of January 10-11, 2021, while armed, the defendants illegally gained access to and searched the premises at 1329 Clinton Street, Buffalo, New York 14206 without probable cause, without a search warrant, and without obtaining consent or permission from Plaintiff Krystyna Kimbrell.

133.     Like the incident of January 10-11, 2021, Defendant Dennis White notified the City of Buffalo Police Department of his intention to search 1329 Clinton Street for alleged bond-jumper Luke Reinhardt.  After receiving that notification, the City of Buffalo Police Department did not require Defendant Dennis White to complete the form required by New York General Business Law §74-a, and dispatched City of Buffalo Police Officers Clayton Reed and Melissa Kurdziel to assist Defendant White with the illegal raid.

134.     Like the incident of January 10-11, 2021, Defendants Dennis White and Wayne Bryant, huddled with City of Buffalo Officers Reed and Kurdziel prior to the raid at 1329 Clinton Street on January 9, 2021.

135.     At no time during that huddle did Officers Reed or Kurdziel ask Defendants Dennis White or Wayne Bryant to provide a search warrant or other lawful authority for the search of 1329 Clinton Street for alleged bond-jumper Luke Reinhardt.

136.     At no time during that huddle did Officers Reed or Kurdziel ask whether Defendants Dennis White or Wayne Bryant were licensed in New York State as a bail recovery agent.

137.     Defendant Dennis White and Wayne Bryant were attired in gear designed to make them look like police officers.  At least one of them was wearing a jacket with the logo "United States Fugitive Task Force" on the back that also displayed a shield resembling a police badge.

24

138.    Upon information and belief, however, Defendants Dennis White and bail recovery agent Wayne Bryant were impersonating law enforcement personnel and were additionally working in concert with uniformed officers from the Buffalo Police Department, Clayton Reed and Melissa Kurdziel, to make their illegal actions appear official.

139.    Without, displaying a warrant, without warning, and without consent or any other form of permission Krystyna Kimbrell, Defendants Dennis White and Wayne Bryant entered the residence at 1329 Clinton Street and searched the premises.

140.    Upon information and belief, none of the defendants had a lawful warrant issued by a judicial officer to enter or search the premises located at 1329 Clinton Street.

141.    Luke Reinhardt was not present before or during the search, as he did not reside at 1329 Clinton Street, Buffalo, New York 14206.

142.    Defendants had no probable cause to believe that Luke Reinhardt lived or was staying at 1329 Clinton Street when they planned and engaged in their search.

**Additional Factual Allegations**

143.    Insisting that the Plaintiffs were lying about Luke Reinhardt's whereabouts without any corroborating information, the Defendants continued to terrorize and harass the Plaintiffs after the armed intrusions into their homes.

144.    Upon information and belief, Defendants Dennis White, Wayne Bryant, and/or Adel Mikheail stalked Plaintiff Schmieder the next morning when she left the home to go get a coffee.

25

145.    Defendants Dennis White, Wayne Bryant, and/or Adel Mikheail followed Plaintiff Schmieder's vehicle.  Defendants White, Wayne Bryant, and/or Mikheail fled when they were discovered.

146.    Plaintiffs have not been contacted by Bail Shop or Buffalo Bail Bonds since the incidents in question.

147.    The Buffalo Police Department Defendants participated in and failed to intervene in and stop the unlawful entry and search of Plaintiffs' homes.

148.    The aforesaid conduct was part of a preexisting agreement and conspiracy between and among the Defendants to intrude in the Plaintiffs' homes without probable cause and without search warrants.  All the individuals acted under color of state law.

149.    Acting under the color of law and pursuant to official policy or custom, the Buffalo Police Department Defendants knowingly or with deliberate indifference to Plaintiffs' rights, failed to instruct, supervise, control, and discipline Defendants Dennis White and Wayne Bryant who entered Plaintiffs' homes without probable cause, without a search warrant, and without consent from any of the Plaintiffs.

150.    The Buffalo Police Department Defendants had knowledge or should have known that the search of Plaintiffs' homes was illegal and a violation of Plaintiffs' rights under the Fourth Amendment.

151.    The Buffalo Police Department Defendants had the power and ability to prevent or aid in preventing the violation of Plaintiffs' Fourth Amendment rights or could have done so if they were reasonably diligent.

152.    The Buffalo Police Department Defendants approved and ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants Dennis White and

26

Wayne Bryant described above by failing to demand that they provide a search warrant before entering the premises.

153.    Defendant City of Buffalo failed to properly screen, supervise, and train the police officers in question concerning the protections and rights under the Fourth Amendment, and failed to instruct them regarding their authority and duty to protect the constitutional rights of City of Buffalo citizens.

154.    Defendant City of Buffalo knew or should have known that searches and seizures would be part of the job activities of the police officers in question, yet, upon information and belief, failed to instruct, guide, train, or supervise them.

155.    Defendant City of Buffalo maintained a policy or custom and practice that provide Buffalo Police assistance to bail recovery agents and allowed bail recovery agents to direct, coordinate, and perform searches of homes in the City of Buffalo for alleged bond-jumpers and forcibly return them to other jurisdictions.

156.    In addition, Defendant City of Buffalo maintained a policy or custom and practice that encouraged and allowed inexperienced police officers to participate in and supervise recovery attempts of alleged bond-jumpers located in the City of Buffalo.  Recovery attempts are often chaotic situations, and the City of Buffalo knew, or should have known, that sending inexperienced police officers to supervise bail recovery agents placed City of Buffalo citizens at an unnecessary risk of harm.

157.    Said policy or custom maintained by the City of Buffalo demonstrated a deliberate indifference to the rights of citizens in the City of Buffalo.

158.    The City of Buffalo knew, or with reasonable diligence should have known, that the lack of regulations and oversight for individual bail recovery agents from New

York and elsewhere made the individuals dangerous and likely to violate the rights of citizens in the City of Buffalo.

159.   For example, in 1998, City of Buffalo Police Officer Robert J. McLellan was killed while assisting bounty hunters with apprehending a suspect.  Despite the 1998 death of Officer McLellan, the City of Buffalo had no policy in place to govern how officers should interact and supervise bounty hunters performing dangerous recovery attempts of alleged bond-jumpers in the City.

160.   Prior to the incidents alleged herein, the City of Buffalo allowed individual bail recovery agents from New York and elsewhere to coordinate, direct, and perform searches of the homes and properties of City of Buffalo citizens without obtaining the proper license to engage in the business of bail enforcement agents in the State of New York.

161.   Most notably, prior to the incidents alleged herein, the City of Buffalo and City of Buffalo Police Department failed to promulgate and enforce procedures to verify the identity of individuals and businesses who engage in the business of bail enforcement in the City of Buffalo.

162.   The City of Buffalo's failure to promulgate and enforce such procedures was in dereliction of the City of Buffalo and City of Buffalo Police Department's duty, pursuant to New York's General Business Law § 74-a, to require bail recovery agents to provide such information upon notification of the bail recovery agent's intention to search for an alleged bond-jumper in the City of Buffalo.

163.   Shortly after the incidents, the undersigned attorneys requested via FOIL all documents the City of Buffalo kept by the City pursuant to New York's General Business Law § 74-a related to the January 9 and 10-11, 2021 raids.

28

164.     On May 27, 2021, the City of Buffalo provided a certification stating that

such records do not exist.  In other words, the City of Buffalo implicitly admitted that it did not

comply with its statutory obligation to verify the identity of the bail recovery agents who led and

participated in the horrifying raids described above.

165.     Upon information and belief, prior to the illegal raids that took place

January 9 and 10-11, 2021, the City of Buffalo and City of Buffalo Police Department did not

have a policy and procedure in place to ensure that bail recovery agents performing recoveries in

the City properly were licensed.

166.     In fact, due to the absence of such a policy, on March 3, 2021, the City of

Buffalo implemented "General Order No.: 2021-005" or the "Bail Enforcement Agent (Bounty

Hunter) Policy" which directed City of Buffalo Police Officers to comply with New York's

General Business Law § 74-a and required bail recovery agents to complete a form that discloses

basic information about the bail recovery agent and information about the subject of the agent's

search.

167.     Notably, the March 3rd "Bounty Hunter Policy" also requires "the

highest-ranking officer on duty at a district" or "the Commissioner's designee at Headquarters"

to meet with the bail enforcement agents prior to the agent's recovery attempt.  Upon

information and belief, prior to the issuance of the "Bounty Hunter Policy," the policy or custom

and practice of the City of Buffalo was to allow and encourage inexperienced police officers to

supervise recovery attempts in the City by bail enforcement agents.

168.     By allowing bail recovery agents from New York and elsewhere to

coordinate, direct, and perform searches for alleged bond-jumpers in the City of Buffalo with

little and sometimes no supervision, Defendant City of Buffalo placed the citizens of the City of Buffalo in grave danger.

169.     Defendants Bail Shop and Buffalo Bail Bonds failed properly to screen, supervise, and train Defendants Adel Mikheail, Dennis White, and Wayne Bryant regarding the protections and rights United States citizens enjoy under the Fourth Amendment.

170.     Defendants Bail Shop and Buffalo Bail Bonds knew or should have known that searches and seizures would be part of the job activities of Defendants Adel Mikheail, Dennis White, and Wayne Bryant, yet, upon information and belief, failed to instruct, guide, train, or supervise them.

171.     In addition, upon information and belief, Buffalo Bail Bonds had lost its license to operate as a bail bond business in the State of New York from 2017 to 2020 due to several statutory violations which govern sureties.  These included (1) allowing persons to delay paying part of their premium for the posting of a bail bond; (2) submission of twenty-one bail affidavits between April 2012 and November 2012 that contained false information regarding premiums paid by the clients of Buffalo Bail Bonds; and (3) failure to follow proper receipt-issuing procedures.

172.     Defendant Buffalo Bail Bonds appealed New York State's license revocation and imposition of a fine, and the Fourth Department affirmed the State's determinations mentioned in paragraph 171 and the imposition of a fine exceeding $2,500, including an additional $500 per offense.

173.     Upon information and belief, Defendant Buffalo Bail Bonds paid a fine of approximately $11,000 and had its bail bond license reinstated on January 1, 2021—mere days before the incidents in question.

174.    Upon information and belief, from 2017-2020, Buffalo Bail Bonds and/or its agents, including Defendants Dennis White and Wayne Bryant, regularly would engage in the business of a bail enforcement agent in the City of Buffalo, despite not being properly licensed to do so in the State of New York.

175.    Upon information and belief, as a result of the City of Buffalo's policy not to comply with its statutory obligation to verify the license status of individuals and businesses who engage in the business of bail enforcement agents in the City of Buffalo, Buffalo Bail Bonds, Dennis White, and Wayne Bryant frequently engaged in the business of a bail enforcement agent in the City of Buffalo without being properly licensed.

176.    The City of Buffalo's lack of oversight and supervision regarding the license status of Buffalo Bail Bonds, Dennis White, and Wayne Bryant placed City of Buffalo citizens at an unnecessary risk of danger and caused the harm to the Plaintiffs described herein.

177.    Following the incident, Plaintiffs made reports to the City of Buffalo Police Department to report the criminal and illegal actions of the Defendants.

178.    Since the incidents, the Erie County District Attorney's Office has brought charges against Defendant White as a result of the incidents giving rise to this lawsuit.  Because the Erie County District Attorney's Office could not reasonably identify the second bail recovery agent, Defendant Wayne Bryant, charges have not yet been filed against him.

179.    Upon information and belief, at this time, the official position of the City of Buffalo Police Department through its former official spokesman is that its officers who aided and abetted the federal crimes and home invasion of Plaintiffs' homes were not at fault and should face no discipline or retraining.

180.    The City of Buffalo thereby has ratified the actions and omissions of its officers as well as the bail recovery agents who committed crimes and civil torts within the City of Buffalo.

181.    Plaintiffs suffered tremendous fear, humiliation, extreme emotional and psychological distress, violations of privacy and loss of liberty, as well as violations of their civil and constitutional rights under the laws of the United States and State of New York as a result of the defendants' conduct and omissions.

182.    Plaintiffs suffered property damage as a result of defendants' unlawful entry and search, including but not limited to the destruction and damage to the door leading to the upstairs residence at 31 Oakdale Place.

183.    Plaintiffs now live in constant fear that bail recovery agents and law enforcement officers could again illegally enter their home and hold them at gun point as prisoners in their home.

184.    This fear has caused the Plaintiffs severe emotional and psychological distress.

185.    As a direct and proximate result of defendants' conduct, Plaintiffs have been compelled to retain the services of counsel to protect and enforce their rights, and therefore, Plaintiffs have incurred and continue to incur attorneys' fees, expert fees, and costs for which Plaintiffs are entitled to reimbursement in an amount to be established at the time of trial pursuant to 42 U.S.C. § 1988.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

**Unreasonable Search and Seizure Under 42 U.S.C. § 1983 Against Defendants Murphy, George, Torres, Keenan, Brown, White, and Wayne Bryant**

186.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 185 of this amended verified complaint as if fully set forth herein.

187.    At all relevant times, Plaintiffs enjoyed and possessed a right under the Fourth and Fourteenth Amendment of the Constitution of the United States to be free from unreasonable searches and seizures and to be secure in their person, home, personal effects, and property.

188.    As described above, the defendants unlawfully and unreasonably entered and searched Plaintiffs and their home and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant naming Plaintiffs or their homes.

189.    Upon information and belief, Defendant Dennis White and Defendant bail recovery agent Wayne Bryant met with the Buffalo Police Department Defendants, and/or their supervisors, before the intrusion into Plaintiffs' homes and discussed who the bail recovery agents were looking for and where they were searching.

190.    Upon information and belief, the Buffalo Police Department Defendants knew, or with reasonable diligence should have known, that the bail recovery agents did not have a valid search warrant or other legal authority to enter the Plaintiffs' homes.

191.    The defendants forcefully entered into Plaintiffs' home, searched their home and property, and damaged or destroyed Plaintiffs' property.

33

192.     The defendants continued to search Plaintiffs' homes and damaged Plaintiffs' property without lawful authority.

193.     As a direct and proximate result of the defendants' unlawful actions as alleged herein, defendants deprived Plaintiffs of their rights under the Fourth and Fourteenth Amendment to be free from unreasonable search and seizure.

194.     Defendants' conduct was outrageous, intentional, and malicious, or at the very least grossly negligent, exhibiting a reckless disregard and deliberate indifference for Plaintiffs' rights.

195.     The defendants' initial entry into Plaintiffs' home as well as defendants' subsequent search and seizure of Plaintiffs' home and property was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

196.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

197.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SECOND CLAIM FOR RELIEF

**VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION**

**False Imprisonment under 42 U.S.C. § 1983 Against Defendants
Murphy, George, Torres, Keenan, Brown, White, and Wayne Bryant**

198.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 197 of this verified complaint as if fully set forth herein.

199.    Defendants are liable pursuant to 42 U.S.C. § 1983 for objectively unreasonably seizing Plaintiffs during the search of their homes in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

200.    Defendants were acting under the color of law when Plaintiffs were unreasonably seized.

201.    Defendants deprived Plaintiffs of the rights, privileges, and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

202.    Defendants confined Plaintiffs when they held them at gun point while searching and questioning the Plaintiffs.

203.    Plaintiffs were aware of the confinement by defendants and repeatedly advised the defendants that they did not consent to the confinement.

204.    The confinement by the defendants was not otherwise privileged and was performed in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

205.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

35

206.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

207.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

#### Excessive Force Under 42 U.S.C. § 1983 Against Defendants Murphy, George, Torres, Keenan, Brown, White, and Wayne Bryant

208.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 207 of this verified complaint as if fully set forth herein.

209.     Based upon the aforesaid conduct, defendants illegally used excessive force under the circumstances against Plaintiffs in violation of their Fourth Amendment right to be secure in his person from unreasonable seizures.

210.     Defendants touched and caused Plaintiffs to be touched in a harmful and offensive manner.

211.     Defendants' actions placed Plaintiffs in apprehension of imminent harmful and offensive bodily contact.

212.     Defendants did so without privilege or consent from Plaintiffs.

213.     Defendants conduct under the circumstances was an excessive use of force on Plaintiffs which a reasonable officer in their position would not have used under the circumstances.

214.     As a result of defendants' conduct, Plaintiffs have suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

215.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

216.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

### Failure to Intervene Under 42 U.S.C. § 1983 Against Defendants Kurdziel, Reed, Murphy, George, Torres, Keenan, Brown, White, and Bryant

217.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 216 of this verified complaint as if fully set forth herein.

218.     The defendants failed to take reasonable steps to prevent other officers from engaging in the illegal acts alleged herein, though they were present at the scene of such violations and were capable of doing so.

219.     The defendants' actions violated Plaintiffs' Constitutionally protected rights under the Fourth and Fourteenth Amendments.

220.     The defendants knew, or reasonably should have known, that their conduct violated Plaintiffs' clearly established Constitutionally protected rights.

221.     The defendants acted with intent to violate, or with deliberate or reckless indifference to, Plaintiffs' clearly established rights under the Fourth and Fourteenth Amendment.

222.    At all times relevant herein, the defendants were acting under the color of state or federal law.

223.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

224.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

### FIFTH CLAIM FOR RELIEF

**VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION**

**Conspiracy to Violate Plaintiffs' Constitutional Rights Under 42 U.S.C. § 1983
Against Defendants Reed, Kurdziel, Murphy, George, Torres, Keenan, Brown,
Bail Shop, Adel Mikheail, Buffalo Bail Bonds, Dennis White, and Wayne Bryant**

225.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 224 of this verified complaint as if fully set forth herein.

226.    By and through the actions described above, defendants, acting under the color of state law, conspired to deprive Plaintiffs of their constitutional rights, in violation of 42 U.S.C. § 1983 and their Fourth and Fourteenth Amendment as guaranteed by the United States Constitution.

227.    Defendants conspired amongst themselves to illegally enter and search Plaintiffs' homes.

228.    Defendants agreed to deprive Plaintiffs of their constitutional rights and deprived them of their constitutional rights by illegally entering and searching Plaintiffs' homes

38

and then intimidate Plaintiffs with force, threats of violence, and continuous harassment thereby

causing Plaintiffs physical pain and mental anguish, together with shock, fright, apprehension,

embarrassment, and humiliation.

229.    As a direct and proximate result of the foregoing, Plaintiffs were damaged

and injured in an amount to be determined at trial.

230.    The aforesaid conduct by the defendants was willful, malicious,

oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages

against each of them in an amount commensurate with the wrongful acts alleged herein.

## SIXTH CLAIM FOR RELIEF

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

**Policy, Custom, and Practice of Defendants and
Failure to Supervise and Train under 42 U.S.C. § 1983
Against The City of Buffalo**

231.    Plaintiffs incorporate the allegations contained in paragraphs 1 through

230 of this verified complaint as if fully set forth herein.

232.    Prior to January 9, 2021, defendants developed and maintained policies,

customs, and practices exhibiting deliberate indifference to the constitutional rights of persons in

the City of Buffalo, which caused the violation of Plaintiffs' rights.

233.    At all relevant times, Defendant City of Buffalo was aware that Officers

Reed, Kurdziel, Murphy, George, Torres, Keenan, and Brown were inadequately trained

regarding the Fourth and Fourteenth Amendment, yet defendant the City of Buffalo maintained a

policy or custom of failing to provide Officers Reed, Kurdziel, Murphy, George, Torres, Keenan, and Brown training on the Fourth and Fourteenth Amendment or adequate supervision.

234.    It was the policy, custom, or both of Defendant City of Buffalo to inadequately supervise and train its police officers, including Officers Reed, Kurdziel, Murphy, George, Torres, Keenan, and Brown, thereby failing to prevent the constitutional violations against Plaintiffs.

235.    Defendants failed to properly screen its officers and retained officers who have a history of inappropriate and unlawful acts, and defendants have failed to properly train and supervise members of the City of Buffalo Police Department, and failed to provide proper procedures and policies of the Department, including (i) procedure to determine when officers have probable cause to enter an individual's home; (ii) procedure to announce an officer's presence when an officer seeks to enter an individual's home; (iii) procedure to enter an individual's home once an officer determines there is probable cause to enter the home; (iv) procedure to not enter an individual's home once an officer determines there is no probable cause to enter the home and an individual in the home tells the officer they cannot enter without a warrant; (v) procedure for the use of force or threat to use force by officers when seizing an individual; (vi) procedure for waiting for a properly obtained search warrant before searching and seizing individual and his home; and (vii) procedure for investigating an individual's claim that officers and bounty hunters illegally entered his or her home, illegally searched and seized him, and unlawfully was threatened with physical violence while in the custody of the defendants.

236.    Defendant City of Buffalo's policies, customs, and practices demonstrate a deliberate indifference to the constitutional rights of persons within the City of Buffalo and caused the violation of Plaintiffs' rights alleged herein.

237.    Defendant City of Buffalo ratified and acquiesced in the unlawful conduct of the other defendants herein, as evidenced by their failure to discipline the other defendants, and by their refusal to investigate the underlying illegal entry and search of Plaintiffs' homes.

238.    The City of Buffalo further developed and maintained policies, customs, and practices that allow individual bail recovery agents from New York and elsewhere to coordinate, direct, and perform searches of the homes and properties of City of Buffalo citizens.

239.    The City of Buffalo knew, or with reasonable diligence should have known, that the lack of regulations and oversight for individual bail recovery agents from New York and elsewhere made the individuals dangerous and likely to violate the rights of City of Buffalo citizens.

240.    The City of Buffalo, however, has and continues to allow individual bail recovery agents from New York and elsewhere to coordinate, direct, and perform searches of the homes and properties of City of Buffalo citizens.

241.    By allowing bail recovery agents from New York and elsewhere to coordinate, direct, and perform searches for alleged bond-jumpers in the City of Buffalo, Defendant City of Buffalo have placed and continues to place the citizens of the City of Buffalo in grave danger.

242.    As a direct and proximate result of the defendants' policies, customs, and practices, Plaintiffs were damaged and injured in an amount to be determined at trial.

243.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## SEVENTH CLAIM FOR RELIEF

### TRESPASS

**Trespass Against Defendants Bail Shop,
Buffalo Bail Bonds, Dennis White, and Wayne Bryant**

244.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 243 of this verified complaint as if fully set forth herein.

245.     As described above, the defendants unlawfully and unreasonably entered and searched Plaintiffs' homes, personal effects, and property, without lawful authority in the form of probable cause or a validly issued judicial search warrant or writ naming Plaintiffs or their homes.

246.     In addition to violating Plaintiffs' Constitutionally protected rights, the defendants trespassed upon Plaintiffs' homes on January 9, 10-11, 2021.

247.     The defendants forcefully entered into Plaintiffs' homes, searched their homes and property, and damaged Plaintiffs' property.

248.     The defendants continued to search Plaintiffs' homes and property and damaged Plaintiffs' property and homes without lawful authority.

249.     The conduct of Defendants Dennis White and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of his duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the

direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

250.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

251.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## EIGHTH CLAIM FOR RELIEF

### FALSE IMPRISONMENT

**Against Defendants Bail Shop,
Buffalo Bail Bonds, Dennis White, and Wayne Bryant**

252.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 251 of this verified complaint as if fully set forth herein.

253.    Defendants intentionally and illegally seized Plaintiffs.

254.    Plaintiffs were conscious of the seizure.

255.    Plaintiffs were seized and confined without probable cause, privilege, or consent.

256.    Defendants knew, or should have known, Plaintiffs had not broken any law and that there was no probable cause or basis whatsoever in seizing the Plaintiffs.

43

257.     Defendants, through any investigation or due diligence, would have, and should have, known that they had no lawful authority to seize the Plaintiffs.

258.     As a result of the defendants' actions and conduct, Plaintiffs' freedom, liberty, and civil rights were denied, and they were detained and imprisoned against their will and without any good faith basis, reasonable suspicion, or probable cause.

259.     The conduct of Defendants Dennis White and bail recovery agent Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

260.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

261.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## NINTH CLAIM FOR RELIEF

### ASSAULT

### Against Defendants Bail Shop,
### Buffalo Bail Bonds, Dennis White, and Wayne Bryant

262.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 261 of this verified complaint as if fully set forth herein.

263.     Defendants' actions placed Plaintiffs in apprehension of imminent harmful and offensive bodily contact.

264.     As a result of the defendants' conduct, Plaintiffs have suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

265.     The conduct of Defendants Dennis White and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

266.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

267.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## TENTH CLAIM FOR RELIEF

### BATTERY

### Against Defendants Bail Shop,
### Buffalo Bail Bonds, Dennis White, and Wayne Bryant

268.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 267 of this verified complaint as if fully set forth herein.

269.     Defendants touched and caused Plaintiffs to be touched in a harmful and offensive manner.

270.     Defendants did so without privilege or consent from Plaintiffs.

271.     As a result of defendants' conduct, Plaintiffs have suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

272.     The conduct of Defendants Dennis White and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

273.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

274.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

46

## ELEVENTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Against Defendants Bail Shop,**
**Buffalo Bail Bonds, Dennis White, and Wayne Bryant**

275.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 274 of this verified complaint as if fully set forth herein.

276.     Defendants' conduct, in illegally entering Plaintiffs' homes, and holding them at gun point from close range questioning them about the whereabouts of an individual who did not reside with any of the Plaintiffs, without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community; conduct which exceeded all reasonable bounds of decency.

277.     Defendants' conduct, described above, was intended to and did cause severe emotional distress to Plaintiffs.

278.     The conduct of Defendants was the direct and proximate cause of injury and damage to Plaintiffs and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

279.     The conduct of Defendants Dennis White and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

280.     As a result of defendants' conduct, Plaintiffs have suffered serious physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

281.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

282.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## TWELFTH CLAIM FOR RELIEF

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

### Against Defendants Bail Shop, Adel Mikheail, Buffalo Bail Bonds, Dennis White, and Wayne Bryant

283.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 282 of this verified complaint as if fully set forth herein.

284.     Defendants' conduct, in hiring and retaining unlicensed bounty hunters who held Plaintiffs at gun point while the unlicensed bounty hunters illegally entered and searched their homes, was careless and negligent as to the emotional health of Plaintiffs and caused severe emotional distress to Plaintiffs.

285.     The acts and conduct of Defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

286.     The conduct of Defendants Adel Mikheail, Dennis White, and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of their duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

287.     As a result of the foregoing, Plaintiffs were deprived of their liberty, were subjected to serious physical and emotional pain and suffering and was otherwise damaged and injured.

288.     As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

289.     The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## THIRTEENTH CLAIM FOR RELIEF

### NEGLIGENCE

**Against Defendants Bail Shop, Adel Mikheail,
Buffalo Bail Bonds, Dennis White, and Wayne Bryant**

290.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 289 of this verified complaint as if fully set forth herein.

291.    Defendants while acting as agents and employees for Bail Shop and Buffalo Bails Bonds in their capacity as agents/bounty hunters for Bail Shop and Buffalo Bail Bonds, owed a duty to Plaintiffs to hire and utilize licensed bounty hunters who perform their bounty hunter duties without the use of excessive force or otherwise placing the Plaintiffs at an unreasonable risk of danger.  Defendants' hiring of unlicensed bounty hunters who had a known history of improper force used during recovery attempts of alleged bond-jumpers constitutes negligence for which Defendants are individually liable.

292.    Defendants' actual use of force and threat to use force upon Plaintiffs when Defendants had no lawful authority to seize Plaintiffs or search Plaintiffs' homes constitutes negligence for which Defendants are individually liable.

293.    Defendants, while acting as agents and employees for Bail Shop and Buffalo Bail Bonds, in their capacity as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, owed a duty to Plaintiffs to perform their duties without the use of false imprisonment. Defendants' use of false imprisonment upon Plaintiffs, when Plaintiffs were unarmed and did not commit a crime against Defendants or to others constitutes negligence for which Defendants are individually liable.

294.    Defendants' use of force and the threat of bodily harm to imprison Plaintiffs when Defendants had no lawful authority to search Plaintiffs' homes or to imprison Plaintiffs constitutes negligence for which Defendants are individually liable.

295.    The conduct of Defendants Adel Mikheail, Dennis White, and Wayne Bryant alleged herein occurred while they were on duty and in uniform, in and during the course and scope of his duties and functions as a bail recovery agent for Bail Shop and Buffalo Bail Bonds, under the direction of Bail Shop and Buffalo Bail Bonds, and while they were acting as an agent, officer, servant and employee of Bail Shop and Buffalo Bail Bonds.  As a result, Defendants Bail Shop and Buffalo Bail Bonds are liable to Plaintiffs pursuant to the state common law doctrine of respondeat superior.

296.    As a proximate result of Defendants' negligent search of Plaintiffs' homes, use of excessive force, and false imprisonment, Plaintiffs sustained physical and emotional pain and suffering, and were otherwise damaged and injured.

297.    As a direct and proximate result of the foregoing, Plaintiffs were damaged and injured in an amount to be determined at trial.

298.    The aforesaid conduct by the defendants was willful, malicious, oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## FOURTEENTH CLAIM FOR RELIEF

## NEGLIGENT HIRING, SUPERVISION, RETENTION, AND TRAINING

### Against Bail Shop, Adel Mikheail,
### and Buffalo Bail Bonds

299.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 298 of this verified complaint as if fully set forth herein.

300.    Defendants Bail Shop Adel Mikheail, and Buffalo Bail Agency negligently hired, trained, retained, and/or supervised Defendants Dennis White and Wayne Bryant.  The acts and conduct of Defendants Dennis White and Wayne Bryant were the direct and proximate cause of injury and damage to Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

301.    Defendants Bail Shop, Adel Mikheail, and Buffalo Bail Bonds failed to properly screen, supervise, and train Defendants Dennis White and Wayne Bryant regarding the protections and rights under the Fourth Amendment.

302.    Defendants Bail Shop, Adel Mikheail, and Buffalo Bail Bonds knew or should have known that searches and seizures would be part of the job activities of Defendants Dennis White and Wayne Bryant, yet, upon information and belief failed to instruct, guide, train, or supervise them.

303.    Following the incident, upon information and belief, Bail Shop and Buffalo Bail Bonds were made aware of the criminal and illegal actions of the Defendants.

304.    To date, Bail Shop and Buffalo Bail Bonds have taken no action to discipline Defendants Dennis White and Wayne Bryant, or to change their hiring practices in

ensuring that individuals hired by Bail Shop and Buffalo Bail Bonds to engage in the business of

bail enforcement agents are properly licensed.

305.    Upon information and belief, the official position of Bail Shop, Adel

Mikheail, and Buffalo Bail Bonds is that Defendants Dennis White and Wayne Bryant were not

at fault and should face no discipline or retraining.

306.    Defendants Bail Shop, Adel Mikheail, and Buffalo Bail Bonds have

thereby ratified the actions and omissions of Defendants Dennis White and bail recovery agent

Wayne Bryant who committed federal crimes and home invasion in their jurisdiction.

307.    As a direct and proximate result of the foregoing, Plaintiffs were damaged

and injured in an amount to be determined at trial.

308.    The aforesaid conduct by the defendants was willful, malicious,

oppressive, and/or reckless and was of such a nature that Plaintiffs claim punitive damages

against each of them in an amount commensurate with the wrongful acts alleged herein.


**<u>DEMAND FOR JURY TRIAL</u>**

309.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs

demand trial by jury in this action of all issues so triable.

53

## **PRAYER FOR RELIEF**

Plaintiffs pray for relief and demands judgment as follows:

1.      That Plaintiffs be awarded compensatory damages against all Defendants in an amount to be determined at trial;

2.      That Plaintiffs be awarded punitive damages against all Defendants in an amount to be determined at trial;

3.      That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Plaintiffs reasonable attorneys' fees, together with the costs of this action against all Defendants; and

4.      That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:      March 9 , 2023
   Buffalo, New York

       **RUPP PFALZGRAF** LLC
       Attorneys for Plaintiffs


        *s/R. Anthony Rupp III*
        R. Anthony Rupp III, Esq.
        Chad A. Davenport, Esq.
       1600 Liberty Building
       Buffalo, New York  14202
       Phone:  (716) 854-3400
       rupp@rupppfalzgraf.com
       davenport@rupppfalzgraf.com

## **VERIFICATION**

STATE OF NEW YORK     )
                               : ss.:
COUNTY OF ERIE         )

       Jake M. Reinhardt, being duly sworn, deposes and says that he is the plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

                                             _____
                                             Jake M. Reinhardt, Plaintiff

Sworn to before me this
8th \_\_\_\_ day of March, 2023.

_____
Notary Public

CATHERYN E. HUNGER
Notary Public, State of New York
Qualified in Erie County
Reg. No. 01HU6400236
My Commission Expires 11/12/20_23

55

## **VERIFICATION**

STATE OF NEW YORK    )
                        : ss.:
COUNTY OF ERIE        )

        Kevin R. Harrington, being duly sworn, deposes and says that he is the plaintiff named in the within entitled action; that he has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to his own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters he believes them to be true.

                                    Kevin R. Harrington, Plaintiff

Sworn to before me this
7th day of March, 2023.

_____
Notary Public

CHAD ALAN DAVENPORT
Notary Public, State of New York
No. 02DA6401208
Qualified in Erie County
Commission Expires 12/09/2023

56

**VERIFICATION**

STATE OF NEW YORK    )
: ss.:
COUNTY OF ERIE    )


       Taylor M. Schmieder, being duly sworn, deposes and says that she is the plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.


_____
Taylor M. Schmieder, Plaintiff

Sworn to before me this
8th day of March, 2023.

_____
Notary Public

JODI L. FOLEY-JOHNSTON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Nov. 22, 2025
Reg #: 01FO6033530

57

**VERIFICATION**

STATE OF NEW YORK )
: ss.:
COUNTY OF ERIE )


Casey E. Carminati, being duly sworn, deposes and says that she is the plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.


_____
Casey R. Carminati, Plaintiff


Sworn to before me this
4th day of March, 2023.

_____
Notary Public

REBECCA D. MESNEKOFF
NOTARY PUBLIC, STATE OF NEW YORK
QUALIFIED IN ERIE CO.
MY COMMISSION EXPIRES JAN. 5, 20 24
ID # 01ME6103687

58

## **VERIFICATION**

STATE OF NEW YORK    )
                           : ss.:
COUNTY OF ERIE       )

       Krystyna Kimbrell, being duly sworn, deposes and says that she is the plaintiff named in the within entitled action; that she has read the foregoing Verified Complaint and knows the contents thereof; and that the same is true to her own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters she believes them to be true.

_Krystyna Kimbrell_
Krystyna Kimbrell, Plaintiff

Sworn to before me this
8th day of March, 2023.

_Notary Public_
Notary Public

JODI L. FOLEY-JOHNSTON
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Nov. 22, 2025
Reg ID# 01FO6033530