**U. S. DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

Jake M. Reinhardt, Taylor M. Schmieder,
Kevin R Harrington, Casey E. Carminati,
Krystyna Kimbrell

     Plaintiffs,

    v.          Docket No.: 21- CV-206

The City of Buffalo, Clayton Reed, individually
and in his capacity as a City of Buffalo Police
Officer, Melissa Kurdziel, individually and in her
capacity as a City of Buffalo Police Officer,
et al.

     Defendants.

_____

# Defendant Buffalo Bail Bonds Agency Inc.'s
# Reply to Plaintiffs' Memorandum in Opposition to
# Its Converted Summary Judgment Motion

**JOY A. KENDRICK**
Attorney at Law
Office and Post Office Address
**Suite 420, 534 Delaware Ave.**
**Buffalo, New York  14202**
**716-855-2251**

Buffalo Bail Bond Agency (hereafter also "BBBA") initially filed a motion to dismiss, which was later converted by the Court to a summary judgment motion. BBBA's original motion did not require that a separate statement of material facts, be annexed to the notice of motion, in numbered paragraphs, as required by Local R. Civ. P. 56 (a) (1) for a summary judgment motion. A compendium of BBBA's material facts are set forth in its motion papers; and it does not appear that Plaintiffs have had any problem discerning what the material facts are, as presented by BBBA.

Given the procedural background of the motion, it is contended that the court should not penalize BBBA for the omission of this separate statement, by denying its motion. If the Court deems such a statement to be necessary, then Buffalo Bail Bonds Agency should be allowed to make such a submission to the court, as the Court deems it necessary.

Plaintiffs claim that Buffalo Bail Bond Agency's motion is disingenuous, however, nothing is further from the truth.  It is contended that the material facts of this case, are not disputed, and that summary judgment should be granted to Buffalo Bail Bonds Agency. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), *Johnson v. Killian,* 680 F.3d 234, 236 (2012).

Further, only justifiable inferences of the nonmovants' evidence are to be drawn in their favor, 398 U.S., at 158-159, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, (1986).

As a general rule, "'a party who retains an independent contractor, as distinguished from a mere employee or servant, is not liable for the independent contractor's negligent acts' " (*Brothers v New York State Elec. & Gas Corp.*, 11 NY3d 251, 257, 898 N.E.2d 539, 869 N.Y.S.2d 356 [2008], *quoting Kleeman v Rheingold*, 81 NY2d 270, 273, 614 N.E.2d 712, 598 N.Y.S.2d 149 [1993]; see *Schiffer v Sunrise Removal,* Inc., 62 A.D.3d 776, 778, 879 N.Y.S.2d 518 [2009]). Whether an actor is an independent contractor or an employee ... is usually a factual issue for the jury. However, "[i]f the question of agency is not open to doubt, it is one for the court. *Hedeman v. Fairbanks, Morse & Co.*, 286 N.Y. 240, 248.

Clearly, the discovery conducted in this matter indicates that the question of agency is not open to doubt (see BBBA's Memorandum of Law (Dkt. 64–1), and its Supplemental Memorandum in Support of the Converted Summary Judgment Motion (Dkt. 162)), and is therefor one that this Court may decide.

This conclusion, in addition to the above, is supported by the testimony of the defendant Adel Mikheail, the Pennsylvania Bounty Hunter whom Bail Shop secured to seek out a New York bail recovery agent to assist them in locating Luke Reinhardt.

There was never a perception given that Dennis White, a New York bail recovery agent, was an employee of Buffalo Bail Bonds Agency. This was clear from the testimony of Adel Mikheail. It was stated on a number of occasions that Dennis White had worked for Buffalo Bail Bonds Agency as a skip tracer (bail enforcement agent/bounty hunter) for many years and was reported by them to be very reliable; however, he was not an employee of the company, and not the only bounty hunter that BBBA had ever used (see Declaration of BBBA's President George Adu-Gyamfi, attached hereto).

Adel testified in fact, that he never asked BBBA if Dennis White was an employee or an independent contractor, with them (see Mikheail's deposition testimony attached as "Exhibit A," 111, l. 17 – 113, l. 1). He testified: "[w]hy would I asked him that? The guy's told me he worked

for Buffalo Bail Bonds. Buffalo Bond, they told me he worked for me for many years. Why I'm going to ask the guy if you're employees or this or that" (112.1. 1– 6).  He later again reiterated this fact stating that Dennis White had told him that he'd been working for Buffalo Bail Bonds for many years. That's it. (112, l. 17-18).

After his initial contact with BBBA, which Adel testified had lasted only for a few minutes (189, l. 9 –12), Adel's contact was primarily with Dennis White. Adel testified that he contacted Dennis White about 5 to 6 times for updates, stating that sometimes he was unable to reach him, as he worked night security (151. l. 5 – 152. 1.6)    Adel had also emailed information to Dennis White on December 30, 2020 and on January 7, 2021 (see Exhibit 9 and 11 attached respectively).  Dennis White had also testified that he had received a fax at a prior office which he maintained on Sawyer Avenue, Tonawanda New York (see the testimony of Dennis White included in BBBA's Supplemental Memorandum at p. 4) in addition to the one he picked up at BBBA's office.

It cannot all be reasonably inferred from the evidence, that Dennis White worked primarily from BBBA's office. Although Dennis White stated that he had worked as a bank Bounty Hunter only for BBBA, this situation differs substantially from the one cited by Plaintiffs *Carrion v. Orbit Messenger*, 82 NY2d 742 (1993). They are the movements name and forms was wired to be utilized while performing the movements work, the movements apply the driver with the workers compensation insurance, paid his weekly stadium weekly, 57% of their gross dealings and described him as an employee on a check cashing car provided to him, among other things, *id. at 743*. Buffalo Bail Bonds Agency clearly provided Dennis White with none of this; and Dennis had his own established business with its own insignias and other business paraphernalia.

3

Nor can it be said that the momentary use of BBBA's fax machine by Dennis White is sufficient to classify him as an employee of that business, and the evidence does not support the conclusion that he primarily worked out of BBBA's office.

It is clear from Adel Mikheail,'s testimony that he did not believe that Dennis White was an employee of Buffalo Bail Bonds Agency; and you cannot reasonably infer from the evidence that BBBA held Dennis White out as possessing the authority to act on its behalf, thereby creating an agency by estoppel, as argued by Plaintiffs. Nor are the exceptions cited by plaintiffs under paragraph C supported by the evidence; shortly following BBBA's referral of Adel Mikheail to Dennis White, there was no further contact between Buffalo Bail Bonds Agency, Adel or Bail Shop.

Nor does the evidence support BBBA's involvement in a conspiracy as there was little communication with the defendants and no involvement following the referral of Mikheail to Dennis White, for assistance. Nor was BBBA Dennis White's employer, and their alleged failure to vet Dennis White's competency to act as a bounty hunter did not cause the harm alleged.

## CONCLUSION

As a result of the above it is respectfully contended that defendant Buffalo Bail Bonds Agency's motion for summary judgment should be granted; and such further and different relief as to this Court seems just and appropriate.

Dated: Buffalo, New York
       September 29, 2023

Respectfully Submitted,

s/Joy A. Kendrick

Joy A. Kendrick

**U. S. DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

Jake M. Reinhardt, Taylor M. Schmieder,
Kevin R Harrington, Casey E. Carminati,
And Krystyna Kimbrell

             Plaintiffs,

          v.

The City of Buffalo, Clayton Reed, individually
and in his capacity as a City of Buffalo Police
Officer, Melissa Kurdziel, individually and in her
capacity as a City of Buffalo Police Officer,
et al.

             Defendants.

Docket No.: 21- CV-206

---

I, George Adu-Gyamfi, declare under penalty of perjury pursuant to 28 USCS §1746, that the foregoing is true and correct:

1.    I am the President and Chief Executive Officer of Buffalo Bail Bonds Agency, Inc., (hereafter Buffalo Bail Bonds Agency) which has been engage in the business only of writing bail bond insurance, since 2009, pursuant to section 6802 of the New York insurance law.

2.    From time to time since the inception of the business in 2009, it has been necessary to obtain the services of a bail recovery agency, in the situation where a bond has been issued for an individual, and that individual has failed to appear in court, as scheduled. Since its inception until February, 2021, Buffalo Bail Bonds Agency has utilized the services of four different bail recovery businesses, aside from the bail recovery business operated by the defendant Dennis White.

3.   During the time that Buffalo Bail Bonds Agency utilized the services provided by Dennis White as a bail recovery agent, Buffalo Bail Bonds Agency was unaware of the customer base that Dennis White may or may not have maintained, as it had nothing to do with the operations of his business.

4.   Please also know that your declarant faced a serious, long term, debilitating medical situation during the earlier part of this year (2023), and the latter months of 2022; as a result, your declarant was unable to personally represent the business at its deposition; but the business instead, was represented by its business associate/ employee, bail bond agent Tweneboa Saow.

Dated:  Buffalo, New York
        September 29, 2023

Buffalo Bail Bonds Agency, Inc.

by

s/George Adu-Gyamfi
_____
George Adu-Gyamfi, President

12:20:01   1        **Q.**   Okay.  Did George ask you to send to
12:20:03   2   him or Buffalo Bail Bonds, information about this
12:20:06   3   fugitive that they were looking for?
12:20:08   4        **A.**   Yeah.  I think I believe he asked me so
12:20:15   5   I called Bail Shop, I asked Sheila, and she said
12:20:18   6   yeah, it's okay to e-mail them the files,
12:20:21   7   information on the guy.
12:20:26   8        So I e-mail it, it came out blank.  They
12:20:28   9   told me that the e-mail was sent came out blank.
12:20:32  10   So I told Bail Shop that my paper came out blank so
12:20:38  11   he provide a fax number and they faxed it to him.
12:20:49  12        **Q.**   Okay.  And during your conversation
12:20:51  13   with George, did you specifically ask if this
12:20:53  14   bounty hunter was an employee of Buffalo Bail
12:20:55  15   Bonds?
12:20:55  16        **A.**   Oh, yeah.  He say that he's very
12:20:58  17   reliable, he's been working for him for quite some
12:21:01  18   time.
12:21:05  19        **Q.**   Okay.  Did George specifically refer to
12:21:07  20   this bounty hunter as an employee of Buffalo Bail
12:21:09  21   Bonds?
12:21:09  22        **A.**   Yeah, he told me that this is my guy.
12:21:16  23        **Q.**   But did he say this is my employee of

12:21:19  1  Buffalo Bail Bonds?

12:21:19  2       **A.**   He -- I have a reliable bounty hunter

12:21:22  3  that work for me.

12:21:23  4       **Q.**   Okay.  Did you ask him, you know, is

12:21:27  5  this an independent contractor, is this an employee

12:21:30  6  of Buffalo Bail Bonds, did you ask him those

12:21:32  7  questions?

12:21:33  8       **A.**   No.  I'm -- sir, I was not like -- I

12:21:38  9  just get to the point what Bail Shop want so that's

12:21:41 10  what I did.

12:21:42 11       **Q.**   Okay.  Based on your understanding of

12:21:49 12  New York Law, does it matter if this person is an

12:21:52 13  independent contractor or employee of Buffalo Bail

12:21:55 14  Bonds, for whether or not that individual needs a

12:21:57 15  license to act as a bounty hunter?

12:21:59 16       **A.**   I really don't know much detail about

12:22:07 17  New York Law.  All I know, that I cannot go to New

12:22:10 18  York and work as a bounty hunter.  That's all I

12:22:14 19  know.

12:22:14 20       To be a bounty hunter, I'd have to have --

12:22:17 21  reside in New York and working for a bail bond

12:22:21 22  company.  So as far as me, I was out of the

12:22:23 23  question.

| | | |
|---|---|---|
| 12:22:24 | 1 | Q.   Okay.   Now, after your conversation |
| 12:22:28 | 2 | with George, what did you do next? |
| 12:22:31 | 3 | A.   Like nothing.   After that, I probably |
| 12:22:37 | 4 | got a phone call from Sheila.   She say I faxed them |
| 12:22:44 | 5 | the files and just please do me a favor because I'm |
| 12:22:48 | 6 | very busy, just communicate with them and let me |
| 12:22:51 | 7 | know if you find the guy.   If they find -- locate |
| 12:22:53 | 8 | the guy, you know, we'll see what we can do in next |
| 12:22:59 | 9 | steps of extradition. |
| 12:23:01 | 10 | Q.   Okay.   So prior to your conversation |
| 12:23:04 | 11 | with Sheila where she told you that she faxed over |
| 12:23:07 | 12 | the information, you contacted Sheila to let her |
| 12:23:11 | 13 | know that you spoke with Buffalo Bail Bonds, |
| 12:23:13 | 14 | correct? |
| 12:23:15 | 15 | A.   I told her before.   Before.   And I |
| 12:23:21 | 16 | spoke to her after, let her know that they wanted |
| 12:23:23 | 17 | to help, it's up to you to make the decision, and |
| 12:23:28 | 18 | she said send them the e-mail of the information. |
| 12:23:31 | 19 | I send the e-mail -- I sent the e-mail, it |
| 12:23:37 | 20 | came out blank.   So he got nothing from me so I |
| 12:23:40 | 21 | call her back and I say -- they called me back, |
| 12:23:41 | 22 | they say here's the fax number, have them fax the |
| 12:23:44 | 23 | office. |

12:23:44  1          So I don't have a fax number.  I don't have

12:23:47  2   a fax machine that work here.  So they send that

12:23:49  3   information by fax.

12:23:50  4          Q.   Okay.  So after your conversation with

12:23:54  5   George, you spoke with Sheila on the phone and told

12:23:57  6   Sheila that it was her decision to make whether or

12:24:00  7   not to use Buffalo Bail Bonds to try to locate the

12:24:05  8   fugitive in New York?

12:24:05  9          A.   Exactly, yeah.  I have to get -- I

12:24:09 10   don't have the authority here.  You understand?  I

12:24:12 11   don't have that authority.

12:24:13 12          But authority -- if I'm in Pennsylvania and

12:24:15 13   I'm working case in Pennsylvania, I'm working the

12:24:18 14   case in Pennsylvania.  If the guy somewhere that I

12:24:21 15   cannot go, the case go back to them.

12:24:28 16          Q.   Okay.  Did Sheila ask you any questions

12:24:29 17   about compensation that they were expecting from

12:24:34 18   Buffalo Bail Bonds or this employee working for

12:24:36 19   Buffalo Bail Bonds?

12:24:36 20          A.   I'm not --

12:24:40 21          MS. KENDRICK:  I would object to the

12:24:41 22   question.  He never said it was an employee.

12:24:44 23          MR. DAVENPORT:  He actually said earlier in

12:34:47   1   I spoke to at that time or after.  You know what I

12:34:49   2   mean?

12:34:53   3        Q.   Well, all right.  So -- so who else did

12:34:55   4   you speak to at Buffalo Bail Bonds besides George?

12:34:57   5        A.   I spoke to Mr. White as well.  I

12:35:00   6   believe he had Mr. White call me.

12:35:05   7        Q.   Okay.  When did Mr. White call you?

12:35:07   8        A.   I think after I finished with George

12:35:13   9   maybe in a day or two he called me and he told me

12:35:16  10   that the e-mail that I sent, he can't read anything

12:35:20  11   on it.

12:35:24  12        It came out black or dark or blank so he

12:35:27  13   said I can't use that so I said well, disregard

12:35:29  14   that e-mail.  He said give me a fax number for

12:35:33  15   Buffalo Bail Bonds and I tell Sheila to fax it.

12:35:36  16        Q.   So was the first time that Mr. White

12:35:39  17   contacted you -- I'm sorry, I'm sorry.  Wait for

12:35:44  18   the question, Adel.

12:35:45  19        Was the first time that Mr. White contacted

12:35:49  20   you, was to let you know that the e-mail didn't

12:35:55  21   send through properly?

12:35:55  22        A.   Yes.

12:35:55  23        Q.   That was the first time Mr. White

*Adel Mikhaeil - Mr. Davenport - 04/25/2023*

109

12:35:57  1   contacted you?

12:35:58  2        **A.**   I'm not really sure which the first or

12:36:02  3   the second time.  Maybe it was a phone call before

12:36:06  4   that.  I'm not really sure.

12:36:09  5        **Q.**   Okay.  Now, during your phone

12:36:13  6   conversation with Mr. White, was there anything

12:36:18  7   else -- your first initial phone conversation with

12:36:21  8   Mr. White, was there anything else that was

12:36:24  9   discussed besides this blank e-mail?

12:36:26 10        **A.**   Yeah.  We discussed, you know, asking

12:36:28 11   me a question about who's the guy and I told him

12:36:31 12   that's the guy who's supposed to be in

12:36:33 13   Pennsylvania.

12:36:34 14        I can't find him in Pennsylvania and his

12:36:38 15   ex-girlfriend say he's somewhere, could be in New

12:36:41 16   York.  We just need to find out if he's in New York

12:36:43 17   or he's still in Pennsylvania.  So that was my

12:36:49 18   conversation with him.

12:36:51 19        **Q.**   And when you spoke with Mr. White, did

12:36:57 20   he provide you his e-mail address?

12:36:59 21        **A.**   He may.  He might or might George give

12:37:03 22   it to me.  I'm not really sure which -- who gave me

12:37:07 23   that e-mail.  Him or George.

*Adel Mikhaeil - Mr. Davenport - 04/25/2023*

110

12:37:08   1      **Q.**   Okay.  So to the best of your

12:37:10   2   recollection, is Exhibit 9, the document that

12:37:14   3   you're looking at, is that an e-mail from you to

12:37:16   4   Dennis White on December 30th?

12:37:20   5      **A.**   Yes.  On December 30th, the e-mail from

12:37:27   6   me to Buffalo Bail Bonds or Mr. White came out

12:37:28   7   black and dark and they told me they can't see it.

12:37:32   8      They can't use this document, they can't see

12:37:35   9   it, and they provide a fax number was given to

12:37:37  10   Buffalo Bail Bonds.

12:37:39  11      **Q.**   And I'm just focusing on Exhibit 9,

12:37:42  12   what was your initial e-mail to Buffalo Bail Bonds

12:37:46  13   for Dennis White, what did it pertain to?

12:37:49  14      **A.**   It didn't pertain nothing because it

12:37:52  15   didn't come out.  It came out black.  First page is

12:37:57  16   black, the other stuff is blurry, you can't even

12:38:00  17   read the document.  So it could be -- you know,

12:38:01  18   it's not useful so they want it faxed.

12:38:04  19      **Q.**   Okay.  Well, what was this e-mail

12:38:05  20   supposed to pertain to?

12:38:06  21      **A.**   Information -- information for the

12:38:11  22   State of Pennsylvania about Luke Reinhardt.

12:38:18  23      **Q.**   And Luke Reinhardt was the fugitive

*Adel Mikhaeil - Mr. Davenport - 04/25/2023*

111

| | | |
|---|---|---|
| 12:38:21 | 1 | that the Bail Shop in Pennsylvania was looking to |
| 12:38:26 | 2 | find and recover, correct? |
| 12:38:28 | 3 | **A.**   Yes. |
| 12:38:29 | 4 | **Q.**   Okay.  Now, during your initial phone |
| 12:38:35 | 5 | conversation with Dennis White, did you have any |
| 12:38:38 | 6 | conversations with him pertaining to his license |
| 12:38:42 | 7 | status? |
| 12:38:44 | 8 | **A.**   Do I ask him license status? |
| 12:38:47 | 9 | **Q.**   Yeah.  Did you ask him if he was |
| 12:38:48 | 10 | licensed? |
| 12:38:49 | 11 | **A.**   He told me, you know, his name, that he |
| 12:38:54 | 12 | worked for George, Buffalo Bail Bonds for many, |
| 12:38:55 | 13 | many years.  He does this case in New York for him |
| 12:39:02 | 14 | blah, blah, blah, that's it. |
| 12:39:04 | 15 | **Q.**   Okay. |
| 12:39:04 | 16 | **A.**   And he's licensed. |
| 12:39:08 | 17 | **Q.**   Okay.  So during your initial phone |
| 12:39:12 | 18 | call with Dennis, Dennis White told you that he had |
| 12:39:15 | 19 | worked for many years for George; is that correct? |
| 12:39:18 | 20 | **A.**   Yes. |
| 12:39:19 | 21 | **Q.**   Okay.  And did you ask him if his work |
| 12:39:23 | 22 | was as an employee of George's or as an independent |
| 12:39:27 | 23 | contractor of George's? |

12:39:28   1        **A.**    It was like why would I ask him that?

12:39:35   2   The guy's told me he worked for Buffalo Bail Bonds.

12:39:38   3   Buffalo Bond, they told me he worked for me for

12:39:41   4   many years.

12:39:43   5        Why I'm going to ask the guy if you're

12:39:47   6   employees or this or that.  You know what I mean?

12:39:49   7   It's not my bail bond company.

12:39:51   8        I'm just trying to communicate between

12:39:54   9   bounty hunter -- to a bail bond bounty hunter to a

12:39:57  10   bail bond.  That's it.

12:40:02  11        **Q.**    All right.  So you can answer with a

12:40:03  12   yes or no, but I don't want you to answer with a

12:40:05  13   question.

12:40:06  14        Did you ask Dennis White if he was an

12:40:08  15   employee or an independent contractor of George's

12:40:11  16   in Buffalo Bail Bonds?

12:40:12  17        **A.**    All he told me that he's been working

12:40:16  18   for Buffalo Bail Bonds for many years.  That's it.

12:40:22  19        **Q.**    Okay.  Again, you can answer with yes

12:40:23  20   or no.  My question is, did you ask Dennis White if

12:40:28  21   he was an employee or an independent contractor --

12:40:31  22        **A.**    No, no.

12:40:32  23        **Q.**    -- of Buffalo Bail Bonds?

*Adel Mikhaeil - Mr. Davenport - 04/25/2023*

113

12:40:33  1          **A.**    I didn't ask that question.

12:40:36  2          **Q.**    Okay.   That's all that I need.   All

12:40:38  3   right.   So before your initial phone conversation

12:40:45  4   with Dennis, did you follow up with the e-mail with

12:40:48  5   some information about Luke Reinhardt?

12:40:51  6          **A.**    Yeah.   They told me the e-mail is

12:40:55  7   blank, they can't read it.

12:40:57  8          **Q.**    Okay.   How did they tell you that the

12:41:01  9   e-mail was blank and that they couldn't read it?

12:41:03 10          **A.**    I don't know.   He might have called or

12:41:07 11   text or whatever.   So I don't -- they provide a fax

12:41:11 12   number.

12:41:12 13          They say fax it to the office so I give

12:41:16 14   Sheila the phone number and she fax it to them

12:41:20 15   because they have a fax.

12:41:22 16          **Q.**    Okay.

12:41:26 17          **A.**    The e-mail was no good.

12:41:28 18          **Q.**    Okay.   Now, when you said he called you

12:41:31 19   to tell you that the e-mail was blank, who is he,

12:41:33 20   is it George or is it Dennis?

12:41:35 21          **MR. DiJIACOMO:**   Object to the form.

12:41:36 22          **THE WITNESS:**   It could be either one of

12:41:37 23   them.

1        **BY MR. DAVENPORT:**

12:41:37  2        **Q.**   What's that?  Adel?

12:41:41  3        **A.**   I don't remember.  It could be one of

12:41:44  4   them.  I don't know who's -- who called me over two

12:41:47  5   years ago, him or Dennis, about the fax.

12:41:52  6        But all I know, they called me to give me a

12:41:56  7   fax number, I give it to Sheila, and she fax it to

12:41:59  8   them.  That's it.

12:42:01  9        **Q.**   Okay.  So Adel, it's your recollection

12:42:03 10   that it was either George or Dennis who called you

12:42:05 11   to tell you that the e-mail was blank?

12:42:08 12        **A.**   Yes.

12:42:09 13        **Q.**   Okay.  But you're not sure who?

12:42:12 14        **A.**   I'm not sure who, but all he know it

12:42:15 15   was one of them.  You know what I mean?

12:42:17 16        **Q.**   I do.  And then during that phone call

12:42:22 17   that you received where they told you that the

12:42:25 18   e-mail was blank, did they also provide you a fax

12:42:29 19   number during that phone call?

12:42:30 20        **A.**   Yes.

12:42:31 21        **Q.**   Okay.  I'm going to show you -- well,

12:42:35 22   Adel, do you remember what that fax number was that

12:42:37 23   they provided to you?

*Adel Mikhaeil - Mr. Davenport - 04/25/2023*

123

| | | |
|---|---|---|
| 12:51:54 | 1 | update, did you have any communications with either |
| 12:51:58 | 2 | Dennis White or anyone with Buffalo Bail Bonds |
| 12:52:00 | 3 | pertaining to Luke Reinhardt? |
| 12:52:02 | 4 | **A.**   Yeah, yeah.  I believe they called me. |
| 12:52:07 | 5 | They say they received the fax, thank you, we will |
| 12:52:12 | 6 | see if we can find out if he is back in New York |
| 12:52:17 | 7 | State. |
| 12:52:17 | 8 | **Q.**   Okay.  Who did you receive the phone |
| 12:52:20 | 9 | call from where that individual said thank you, we |
| 12:52:23 | 10 | received the fax? |
| 12:52:24 | 11 | **A.**   I think it could be two phone calls. |
| 12:52:28 | 12 | One from White.  It could be from Mr. White.  You |
| 12:52:33 | 13 | know what I mean? |
| 12:52:34 | 14 | That he went to the office to pick up the |
| 12:52:35 | 15 | fax or whatever.  He introduce himself and, you |
| 12:52:40 | 16 | know, he said that he got the file from George and |
| 12:52:42 | 17 | he's going to try to see if the guy's in New York. |
| 12:52:48 | 18 | **Q.**   Okay.  Now, did you have any texting |
| 12:52:57 | 19 | communications with Dennis White during this time? |
| 12:53:01 | 20 | **A.**   It could be.  It could be, you know, a |
| 12:53:03 | 21 | phone call or text a few times. |
| 12:53:07 | 22 | **Q.**   Okay.  Do you remember when you had |
| 12:53:10 | 23 | texting conversations with Dennis White? |

13:19:39  1        Q.    Okay.   Now, in trying to locate
13:19:50  2   Luke Reinhardt -- well, actually, first before we
13:19:55  3   get there.
13:19:56  4        You -- you agree with me, right, that you
13:19:58  5   received a phone call from Sheila Smith a few days
13:20:02  6   after the fax was sent, where she was looking for
13:20:04  7   an update, correct?
13:20:06  8        A.    Right.
13:20:06  9        Q.    Okay.   And after you received that
13:20:08 10   phone call from Sheila, what did you do next?
13:20:11 11        A.    She asked me to -- I tell her why don't
13:20:17 12   you just call the guy and ask him.   She says can
13:20:20 13   you please just reach out and see if you have any
13:20:22 14   update and I say okay.
13:20:26 15        I called the guy and I ask him if you have
13:20:28 16   any update on the guy.   He -- he told me he's still
13:20:34 17   trying to find out if it was here or if it's in
13:20:40 18   Pennsylvania.   We're still looking for him.
13:20:41 19        I said we just need to locate him to see if
13:20:44 20   he's in New York.   If he's in New York, just let us
13:20:48 21   know.   That's it.
13:20:49 22        Q.    Okay.   So -- so your phone conversation
13:20:52 23   was with Dennis White shortly after Sheila Smith

13:20:54   1   asked for an update; is that correct?

13:20:56   2          A.    Yes.

13:20:56   3          Q.    Okay.  How long did that phone

13:20:59   4   conversation with Dennis White last for?

13:21:00   5          A.    It last a few minutes.  Yeah, I just

13:21:15   6   called the guy and I asked him for update.  He say

13:21:18   7   he doesn't have any update yet.

13:21:20   8          Q.    Okay.  And when he called -- when you

13:21:28   9   called looking for an update, you told Dennis White

13:21:32  10   during that phone call that you just wanted him to

13:21:34  11   locate Luke Reinhardt, correct?

13:21:36  12          A.    This was the conversation from day one.

13:21:42  13   I just say I just want to find out if he's in New

13:21:46  14   York.

13:21:46  15          Q.    Okay.

13:21:46  16          A.    You know what I mean?  Bail Shop wanted

13:21:49  17   to find out if he's in New York because we don't

13:21:53  18   know if he's still in Pennsylvania hiding

13:21:55  19   somewhere, whatever.  We just need to find out if

13:21:57  20   he's still in New York.

13:21:58  21          So he told me he still didn't get a chance

13:22:03  22   to do anything, but he will get back to me.  So I

13:22:06  23   called Sheila and I told him I talked to the guy

13:24:20   1          **Q.**    Okay.  Now, when was the next time that
13:24:25   2    you had a phone conversation with either Sheila or
13:24:29   3    Dennis pertaining to Luke Reinhardt?
13:24:33   4          **A.**    After the incident.
13:24:38   5          **Q.**    Okay.  So you're telling me that you
13:24:43   6    didn't have any other conversations with either
13:24:46   7    Sheila or Dennis White prior to the incident taking
13:24:51   8    place after that first initial request for an
13:24:54   9    update?
13:24:55  10          **A.**    Like between that was a couple phone
13:24:59  11    calls.  Five, six phone calls, leave a message, he
13:25:02  12    didn't call back, any update, blah, blah, blah.
13:25:05  13          You know what I mean?  Several times.
13:25:06  14    That's it.  There's nothing like -- you know what I
          15    mean?
13:25:09  16          If you -- if you reach -- send me five
13:25:13  17    messages, I get five, six contact time with you or
13:25:15  18    I talk to you.  Whatever that, I told Sheila.
13:25:20  19          **Q.**    Okay.  So your recollection is that
13:25:25  20    after that first initial phone call that you made
13:25:27  21    looking for a status update from Dennis, you would
13:25:32  22    have had several more phone conversations with
13:25:35  23    Dennis looking for updates; is that correct?

13:25:37  1          **A.**    Like I say, I call five, maybe six

13:25:43  2   times.  Sometime I leave a message, sometimes he

13:25:46  3   calls back, sometimes he send me a text.  I'm

13:25:48  4   working on it, I'm still update -- I was working

13:25:51  5   night security, whatever.  I woke up in the

13:25:53  6   morning, I'm going to check.

13:25:56  7          So he was not like -- like every time I call

13:26:01  8   him, I reach him.  So you can count every time I

13:26:04  9   attempt to call him, that was attempt to call.

13:26:13 10          **Q.**    Okay.  So I guess you would agree with

13:26:15 11   me that there was some communication between you

13:26:18 12   and Dennis during this time after you first

13:26:22 13   initially contacted them for their services and

13:26:26 14   when the incident that we're here to talk about

13:26:29 15   ultimately happened.  Would you agree with me on

13:26:32 16   that?

13:26:32 17          **A.**    Well, I agree with you that Bail Shop

13:26:36 18   asked me to contact him regarding that.  You know

13:26:40 19   what I mean?

13:26:40 20          I shouldn't be contacted because I told you

13:26:44 21   that from day one, I shouldn't be in the middle of

13:26:47 22   this.

13:26:48 23          My job was done in Pennsylvania.  This was

*Adel Mikhaeil - Ms. Kendrick - 04/25/2023*

189

14:31:38  1  referred to some other person; is that correct?

14:31:41  2       **A.**   No.

14:31:42  3       **Q.**   Now, you said in your testimony that

14:31:45  4  you believed that it was George.  Are you certain

14:31:48  5  that it was George or do you -- could it have been

14:31:50  6  another person who answered the telephone?

14:31:52  7       **A.**   Well, whoever answered the phone, they

14:31:57  8  told me my name is George.

14:31:59  9       **Q.**   Okay.  And how long was the

14:32:03 10  conversation that you had with the person that

14:32:05 11  answered the telephone?

14:32:06 12       **A.**   A few minutes, ma'am.  A few minutes.

14:32:11 13       **Q.**   Five minutes, less than five minutes?

14:32:13 14       **A.**   I can't tell you for sure.  It's been

14:32:16 15  over two years.  I'm sorry.

14:32:19 16       **Q.**   Okay.  You're saying it was only for a

14:32:22 17  few minutes though?

14:32:22 18       **A.**   A few minutes, five minutes, six

14:32:25 19  minutes, seven minutes.  I'm not really sure, but I

14:32:28 20  spoke -- this is what I spoke to.

14:32:32 21       **Q.**   Okay.  And had you had any contact with

14:32:38 22  Buffalo Bail Bonds Agency prior to this

14:32:42 23  conversation that we're talking about now?



**From** adel mikhaeil  u aegypt444@gmail com
**Date:** December 30, 2020 at 5:12:25 PM EST
**To:** Dw_12178@aol.com
**Subject: Fugitive Luke Reinhardt**



EXHIBIT

009

AJH 04/26/2023





BAIL SHOP DEFENDANTS - 11



Sent from my iPhone



**From:** adel mikhaeil <usaegypt444@gmail.com>
**Date:** January 7, 2021 at 6:06:01 AM EST
**To:** Dw_12178@aol.com
**Subject:** Luke





9/16/22, 3:00 PM



Sent from my iPhone









FOR LICENSED INVESTIGATOR PURPOSES ONLY

LUKE REINHARDT 08/03/1991-People-Search-202209221005

**BAIL SHOP DEFENDANTS - 20**



Casey, Forensic Investigations, LLC

This report prepared by DMS Computer Forensic Investigations

**LUKE G REINHARDT , 31 Years Old (Buffalo, NY, Warsaw, NY)**

**LUKE G REINHARDT (12/22/2009 to 08/10/2022)**

SSN: **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**
Issued: NEW YORK 1991-1993

**Date of Birth**
DOB: **08/03/1991**
Age: 31

Gender: Male

**Possible Relatives**
Jake M Reinhardt 1988 Age: 34
Monte A Reinhardt 1956 Age: 66 Died at 53

**Indicators**
Bankruptcies: **None Found**
Liens: **None Found**
Judgments: 4 Found , Latest in 2021

**Cities**
Buffalo, NY (04/05/2013 to 09/22/2022)
Warsaw, NY (01/01/2010 to 12/28/2017)

**Possible Phones**
(716) 507-0749 (ET) (Mobile) (86%)
(716) 931-5664 (ET) (VoIP) (66%)
(585) 786-2326 (ET) (LandLine) (26%)

**Counties**
Erie County, NY (04/05/2013 to 09/22/2022)
Wyoming County, NY (01/01/2010 to 12/28/2017)

**Possible Email Addresses**
l.r.reinhardt41@gmail.com (100%)
lukereinhardt75@gmail.com (100%)
lukereinhardt41@gmail.com (45%)
angie_anders@yahoo.com (40%)
babyboy34life@gmail.com (40%)

**Address History (6)**
1329 CLINTON ST APT 1, BUFFALO, NY 14206-2913 (ERIE COUNTY) (01/18/2022 to 09/22/2022)
Current Private Phone at address
(716) 931-5664(ET) - KRYS KIMBRELL

1329 CLINTON ST, BUFFALO, NY 14206-2913 (ERIE COUNTY) (12/01/2013 to 08/10/2022)
Address contains: 2 apartments

BAIL SHOP DEFENDANTS - 21

FOR LICENSED INVESTIGATOR PURPOSES ONLY

Current Private Phone at address
(716) 931-5664(ET) - KRYS KIMBRELL

3730 STATE ROUTE 20A W, WARSAW, NY 14569-9605 (WYOMING COUNTY) (01/01/2010 to 12/28/2017)

123 IMSON ST, BUFFALO, NY 14210-1617 (ERIE COUNTY) (12/01/2013 to 12/01/2013)
Address contains: 2 apartments

45 BAITZ AVE, BUFFALO, NY 14206-2905 (ERIE COUNTY) (12/01/2013 to 12/01/2013)

146 BAITZ AVE, BUFFALO, NY 14206-2908 (ERIE COUNTY) (04/05/2013 to 12/01/2013)

