UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAKE REINHARDT, TAYLOR M. SCHMIEDER,
KEVIN R. HARRINGTON, CASEY E.
CARMINATI, and
KRYSTYNA KIMBRELL

                              Plaintiffs,

v.                                                      Civil Action No.: 21-cv-00206-GWC

THE CITY OF BUFFALO, CLAYTON REED,
MELISSA KURDZIEL, JAE S. MURPHY,
SPENCER T. GEORGE, ROBERTO J. TORRES,
COLIN KEENAN, DEVON SALTER-BROWN,
BAIL SHOP, LLC, ADEL MIKHAEIL,
BUFFALO BAIL BONDS AGENCY, INC.,
DENNIS WHITE, and WAYNE BRYANT.,

                              Defendants.
_____

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW

**RUPP PFALZGRAF LLC**
*Attorneys for Plaintiffs*
R. Anthony Rupp III
Chad A. Davenport
Matthew E. Gabalski
1600 Liberty Building
Buffalo, New York 14202
Rupp@RuppPfalzgraf.com
Davenport@RuppPfalzgraf.com
Gabalski@RuppPfalzgraf.com
(716) 854-3400

# I.
# INTRODUCTION

The Plaintiffs respectfully submit this supplemental briefing in response to the Court's indication during the April 21, 2025 hearing that it is considering the procedural consequences of Bail Shop, LLC's ("Bail Shop") failure to oppose motions for summary judgment. This Court stated that it would like further briefing on potential remedies for Bail Shop's noncompliance, including a potential default judgment. *See* Doc. 196. Furthermore, this Court also requested additional briefing relevant to Buffalo Bail Bonds Agency, INC.'s ("Buffalo Bail Bonds") liability in this matter. As explained herein, the proper path forward for Bail Shop's failure to oppose motions for summary judgment is not entry of a default judgment, but rather adjudication of summary judgment under Fed. R. Civ. P. 56(a). Plaintiffs also further brief why Buffalo Bail Bonds can be held liable in this matter, as requested.

# II.
# DISCUSSION

It is improper to seek a default judgment in light of Bail Shop's failure to defend against the motion for summary judgment. *See* Doc. 179 and Doc. 188. Therefore, the Court should proceed with analyzing whether to grant summary judgment.

### A. The Court must examine the movant's motion and not enter default judgment.

The Second Circuit has held "when a party, whether pro se or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment." *Jackson v. Fed. Express*, 766 F.3d 189, 197 (2d Cir. 2014). Instead, a district court "must" examine the movant's statement of undisputed facts and the proffered record support to determine if the movant is entitled to summary judgment. *Id.*

- 1 -

A nonresponse, however, does run the risk of the unresponded-to statements of undisputed facts proffered by a movant as being admitted. *See id.* at 194. (citing Fed. R. Civ. P. 56(e)(2)). But "a non-response does not risk a default judgment …." *Jackson*, 766 F.3d at 194.

Before summary judgment can be entered, a district court must ensure each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden "even if the statement is unopposed." *Id.* Effectively, what must happen is a district court must examine an unopposed motion for summary judgment to analyze whether the burden of showing there is no genuine dispute of material fact remains and that the citation to evidence in the record supports the unopposed assertions. *Id.* "Thus, Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Id.*

What is more, the *Jackson* case also appears to stand for the position that even the appearance of entering a default or granting an unopposed motion for summary judgment with "default reasoning" is improper. 766 F.3d 194-97.

In *D.H. Blair & Co. v. Gottdiener*, a motion to confirm or vacate an award was made. 462 F.3d 95, 108-10 (2d Cir. 2006). The motion went unopposed and the district court entered a default judgment. *Id.* at 109. On appeal, the Second Circuit held that "the lack of a response does not justify a default judgment." *Id.* at 109-10. It reasoned that confirmation and vacatur motions are generally accompanied by a record that may resolve the merits or require judicial deference and thus similar to a motion for summary judgment. *Id.* at 108-10. So, "when a court has before it such a record, rather than only the allegations…in complaints…judgment the court enters should be based on the record." *Id.* Consequently, the Second Circuit reversed the district court's decision. *Id.* at 109.

Ultimately, the reasoning behind the aforesaid principle is that Rule 55 default is meant to apply only where "the first step has been taken…the filing of a complaint—and the court thus has only allegations and no evidence before it." *Id.* at 107.

Here, it can be gleaned from both *Jackson* and *Gottdiener* that pursuing the entry of a default judgment because Bail Shop failed to oppose our motion for summary judgment would be improper. This is because the court now has an evidentiary record before it and we must still meet our burden. Nonetheless, not opposing the motion for summary judgment is still detrimental and the facts not opposed will be deemed admitted. *See, e.g.*, *Jackson*, 766 F.3d at 194.

So, pursuing entry of a default judgment is improper. Courts must independently assess the merits of the motion, and the moving party must provide evidence establishing the absence of any material fact.

### B. Plaintiffs' unopposed statement of material facts supports summary judgment in their favor.

The unopposed facts in Plaintiffs' statement of facts that apply to Bail Shop support a grant of summary judgment in their favor. The statement of material facts establish the following:

- Bail Shop assisted in the carrying out of these raids without possessing a bail piece as required by law. (Plaintiffs' SOMF ¶¶ 127-34).

- A bail piece is a court order authorizing the apprehension of a fugitive. (*Id.* at ¶¶ 116-122).

- Bail Shop's agent, Dennis White assisted in apprehending Luke Reinhardt but White did not have a license as a bail recovery agent in the State of New York. (*Id.* at ¶¶ 67-70).

- Adel Mikhaeil was hired by Bail Shop to locate Luke Reinhardt and contacted the owner of Buffalo Bail Bonds who then referred Dennis White. Mikhaeil

> believed White was licensed in New York but his licensure never was verified. (*Id.* at ¶¶ 71-75). Nevertheless, Bail Shop approved using White and Buffalo Bail Bonds for the recovery efforts. (*Id.* at ¶ 76).

- Bail Shop, however, lacked legal authority regarding the aforesaid and for the apprehension of Luke Reinhardt. (*Id.* at 127-34).

- White subsequently took part, and worked in concert with Buffalo Police Department, in an armed, warrantless entry and search. (*Id.* at ¶¶ 58-65).

- Because of the inherently dangerous activity that is bounty hunting, along with the negligent hiring, Bail Shop is vicariously liable for the various state law claims, such as trespass, false imprisonment, assault, and battery committed at Plaintiffs' homes. (*Id.* at ¶¶ 32-38, 45-47, and 58-65).

These unopposed facts, combined with the evidence that Bail Shop's approved bounty hunters, with police assistance, conducted armed entries in Plaintiffs' homes without legal authority, establish violations of the Fourth Amendment and state law, and support 42 U.S.C. § 1983 liability under the joint action doctrine. As it pertains to Bail Shop, the unopposed facts establish that it is vicariously liable for the torts committed at Plaintiffs' homes.

### C. Buffalo Bail Bonds can be held liable for negligently providing a reference.

The undisputed facts indeed establish that Buffalo Bail Bonds is liable for the referring of the unlicensed Dennis White to be used by Bail Shop. Buffalo Bail Bonds argued that because it did not enter into any agreement or have any contractual relationship, that it cannot be responsible for selecting a bounty hunter to return that individual because it did not have a duty. But that's wrong. And this Court requested additional briefing on this issue. Admittedly, this precise question appears to be a matter of first impression in this circuit. So, the Plaintiffs will address this question syllogistically.

1. *The failure to exercise reasonable care when providing a referral can be negligence.*

Legal liability can apply for negligent referral services when a party refers another to a service provider while failing to exercise reasonable care in ensuring the competence or qualifications of the referred, leading to a harm or loss. In the medical context, a professional can be held negligent if he does not exercise due care in the making of a recommendation or substitution. *See, e.g.*, *Graddy v. New York Med. College*, 19 A.D.2d 426, 944 (1st Dept. 1963); *see also Estate of Tranor v. Bloomburg Hosp.*, 60 F. Supp 2d 412, 415-16 (M.D. Pa. 1999) (holding a specialist can be liable under general negligence principles when referring out a specialist the referrer knows or has reason to know is not properly qualified); *but see Call v. Czaplicki*, 2010 U.S. Dist. LEXIS 97268 (D.N.J. Sep. 16, 2010) (finding that although insurance brokers can be held negligent for the negligent referral of a carrier, an insurance broker does not have a duty to reasonably refer client's to an attorney, so the court did not impose a duty to conduct a reasonable investigation regarding same).

What can be gleaned from this case law is that liability in negligence when providing a referral largely hinges on whether the referring party failed to exercise reasonable care, and whether the context supports the imposition of such a duty. Considering this, the Plaintiffs will next analyze the imposition of a duty under these circumstances.

2. *Imposing a duty of care is appropriate.*

Public policy mandates the imposition of a duty of care on Buffalo Bail Bonds when it referred Dennis White to Bail Shop to be used as a bounty hunter.

"'The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court.'" *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F.

- 5 -

Supp. 3d 570, 592 (S.D.N.Y. 2022) (quoting *Arango v. Vasquez*, 89 A.D.3d 875, 875 (2d Dept. 2011)).  "Courts traditionally 'fix the duty point by balancing factors including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability.'"  *Toretto*, 583 F. Supp. 3d at 593 (quoting *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001)).  When determining duty, courts are required to be mindful of the precedential effects of the ruling.  *Toretto*, 583 F. Supp. 3d at 593.  "'The key…is that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm.  In addition, the specter of limitless liability is not present because the class of potential plaintiffs…is circumscribed by the relationship.'"  *Id.* (quoting *Hamilton*, 96 N.Y.2d at 232).

    Here, Buffalo Bail Bond's referral of Dennis White—an unlicensed bounty hunter—to Bail Shop, without conducting even a basic license check, represents a failure to exercise care where it was most needed.  Buffalo Bail Bond had an existing business relationship with White and was in the best position to evaluate his qualifications and risk profile before recommending him for armed field operations.  (Plaintiffs' SOMF ¶¶ 67-70).  Buffalo Bail Bonds is local to New York and had firsthand knowledge of White's licensing representations.  (*Id.* at ¶ 70).  Yet Buffalo Bail Bonds simply took White at his word and failed to verify even the most basic credential—a New York bounty hunting license before referring him as a bounty hunter for hire.  (*Id.* at ¶¶ 74-75).

    Public policy strongly supports imposing a duty in this context.  Society reasonably expects that private businesses engaged in fugitive recovery—an activity necessarily involving entry into homes, armed confrontations, and risk to bystanders—will vet those they

recommend for such operations.  Recognizing a duty here does not invite limitless liability or proliferate claims.  It applies only to foreseeable harms arising from direct referrals of armed bounty hunters in a tightly defined relationship involving criminal enforcement authority.  Rather than transforming Buffalo Bail Bonds into an insurer, this duty merely requires ordinary diligence in contexts where carelessness can result in egregious harm, as occurred here.  *See, e.g.*, *Reinhardt v. City of Buffalo*, 2022 U.S. Dist. LEXIS 117991, *43-45 (W.D.N.Y. July 5, 2022) (finding that bail enforcement activities are inherently dangerous and stating exercising reasonable care can render the activity safer, but the risk to the public cannot be totally eliminated).

It therefore follows that; a person or party indeed has a duty to ensure a person properly is licensed before recommending that person to engage in an inherently dangerous activity.  This line of reasoning is further bolstered by rationale behind licensure requirements.  *See, e.g.*, *Chalfy v. Turoff*, 804 F.2d 20, 23 (2d Cir. 1986) (noting that licensing requirements protect against risks posed by individuals whose conduct may affect the ability to safely perform the licensed activities); *see also*, *Mishtaku v. City of New York*, 2015 U.S. Dist. LEXIS 193797, *11-12 (S.D.N.Y. May 4, 2015) (recognizing that licensing laws serve the purpose of promoting public safety and preventing harm by ensuring only qualified individuals are granted licenses).  So, Buffalo Bail Bond's disregard for this fundamental safeguard underscores the need for courts to impose a duty when private entities bypass licensure checks and place the public in harm's way.

### 3.  Buffalo Bail Bond's superior knowledge must be considered.

Considering this laid out framework, Buffalo Bail Bond's also had a heightened duty.  This is because an actor who has skills or knowledge that exceed those possessed by

- 7 -

others, those skills or knowledge are to be taken into account when deciding if the actor behaved as a reasonably careful person.

New York State common law looks at whether an individual exercised the ordinary degree of care expected of a reasonable person under the circumstances, and this factors in the individual's knowledge, skill, and experience.  *See, e.g.*, *Lauer v. City of New York*, 95 N.Y.2d 95 (2000) (considering the impact of a person's knowledge and skill when assessing negligence, thereby indicating knowledge and skill is a relevant factor); *see also Fisher v. United States*, 299 F. Supp. 1, 16 (E.D. Pa. 1969) (holding that defendants with superior knowledge, skill, and experience in safety matters can be held liable for failing to exercise control over contractors or warn of known dangers, especially when defendant is in a position to prevent the harm).  "If an actor has skills or knowledge that exceed those possessed by most others, these skills or knowledge are circumstances to be taken into account in determining whether the actor has behaved as a reasonably careful person."  Restatement (Third) Torts § 12.

For example, in the *Fisher* case, the defendant had engaged in supervisory roles before, and its agent was aware that subcontractors sometimes hired inexperienced personnel. 299 F. Supp. at 16.  The court stated that the defendant should have known of the necessity of protecting the plaintiff from unreasonable harm and noted that "it is a fundamental principle of tort law that an actor is held not only to the standard of reasonable men in general, but also to such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has."  *Id.*

Applying these principles here, Buffalo Bail Bonds had previously used White as a bounty hunter and thus knew or should have known the risks associated with employing unlicensed or unqualified recovery agents. (Plaintiff's SOMF ¶¶ 67-81).  Given its business in

this line of work, Buffalo Bail Bonds was in the best position to verify White's qualifications before recommending him to Bail Shop.  Its failure to do so—despite its familiarity with industry risks—violated the duty imposed on actors with superior knowledge, thereby leading to the unlawful and dangerous home invasions at issue.

So, to conclude the syllogism, because the law recognizes negligence in failing to exercise reasonable care in providing a referral where a duty exists, and because public policy, licensure principles, and Buffalo Bail Bonds' industry knowledge all support imposing such a duty here, it follows that Buffalo Bail Bonds is liable for negligently referring Dennis White.

## III.
## CONCLUSION

For the foregoing reasons, the Court should not proceed with default judgment procedures, the proper course of conduct is to analyze the motions for summary judgment.  For all these reasons, the Court should reject any suggestion that Buffalo Bail Bonds owed no duty.  Public policy, industry expectations, and Buffalo Bail Bonds' own superior knowledge and experience mandate the imposition of a duty of care here.  Plaintiffs respectfully request that the Court find Buffalo Bail Bonds liable for negligently referring Dennis White and grant Plaintiffs' motion for summary judgment accordingly.

Dated:  April 25, 2025
       Buffalo, New York

                       **RUPP PFALZGRAF LLC**
                       *Attorneys for Plaintiffs*

                       By: *s/Chad A. Davenport*
                             R. Anthony Rupp III, Esq.
                             Chad A. Davenport, Esq.
                       1600 Liberty Building
                       Buffalo, New York 14202
                       (716) 854-3400